## STATE OF CONNECTICUT *v.* JOHN TABONE
## (SC 18119)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

418

Argued October 21, 2008—officially released July 7, 2009

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara Eschuk*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. This case returns to us for a second time to address the sentence of the defendant, John Tabone, following our decision in *State* v. *Tabone*, 279 Conn. 527, 544, 902 A.2d 1058 (2006), in which we remanded the case for resentencing after concluding that the defendant's original sentence of ten years incarceration followed by ten years of special parole was illegal. The defendant appeals[1] from the judgment of the trial court sentencing him on remand to a total effective sentence of twenty years incarceration, execution suspended after ten years, followed by ten years of probation for his conviction of sexual assault in the second degree in violation of General Statutes (Rev. to 1999) § 53a-71

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and, upon the state's motion, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

(a) (4),[2] sexual assault in the third degree in violation of General Statutes (Rev. to 1999) § 53a-72a (a) (1) (A)[3] and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[4] On appeal, the defendant claims that his total effective sentence after remand is illegal because: (1) the substitution of a ten year term of probation for the ten year period of special parole that originally was imposed unconstitutionally enlarged the sentence in violation of his due process rights under the federal and state constitutions; (2) the sentence was predicated on a personal agreement between the trial court and the state's attorney in violation of General Statutes (Rev. to 1999) § 53a-32 (b) (4)[5] and the separation of powers doctrine; and (3) the

[2] General Statutes (Rev. to 1999) § 53a-71 provides in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (4) such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare . . . .

"(b) Sexual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court."

[3] General Statutes (Rev. to 1999) § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . .

"(b) Sexual assault in the third degree is a class D felony."

[4] General Statutes (Rev. to 1999) § 53-21 (2) provides in relevant part: "Any person who . . . has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[5] General Statutes (Rev. to 1999) § 53a-32 (b) provides: "If such violation [of probation] is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term

sentence violates the double jeopardy clause of the fifth amendment to the United States constitution and the Connecticut constitution.[6] We reverse the judgment of the trial court and remand the case for further proceedings.

The record reflects the following procedural history that is relevant to this appeal, most of which was set forth by this court in *State* v. *Tabone*, supra, 279 Conn. 530–32. "On November 2, 2000, pursuant to a plea agreement, the defendant pleaded guilty under the *Alford* doctrine[7] to sexual assault in the second degree . . . sexual assault in the third degree . . . and risk of injury to a child[8] . . . . The trial court sentenced

of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[6] The fifth amendment to the United States constitution provides in relevant part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a [g]rand [j]ury . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ."

"Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 119, 794 A.2d 506 (2002).

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[7] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

[8] The defendant was charged, in a substitute long form information, with engaging in multiple acts of sexual intercourse and indecent sexual contact

the defendant as follows: (1) for the charge of sexual assault in the second degree, ten years of imprisonment followed by ten years of special parole; (2) for the charge of sexual assault in the third degree, five years of imprisonment followed by five years of special parole; and (3) for the charge of risk of injury to a child, five years of imprisonment followed by five years of special parole. [The court also imposed certain conditions on the defendant, including enrollment in an outpatient sex offender treatment program.][9] The trial court ordered all of the sentences to run concurrently, resulting in a total effective sentence of ten years of imprisonment followed by ten years of special parole.[10]

"In June, 2004, the defendant filed a motion to correct his sentence for sexual assault in the second degree pursuant to Practice Book § 43-22.[11] Thereafter, the trial court held a hearing on the defendant's motion. At the hearing, the defendant pointed out that [General Statutes (Rev. to 1999)] § 53a-35a (6)[12] limits the maximum

---

on dates between January 1, 1999, and May 31, 1999, with a person under the age of thirteen years.

[9] Specifically, the trial court required the defendant to: enroll in an outpatient sex offender treatment program; submit to polygraph examinations as deemed appropriate; be prohibited from contact with the victim or the victim's family; be prohibited from living with or having any contact with minors under the age of sixteen years; and be prohibited from working or volunteering in any activity involving contact with any children under the age of sixteen years.

[10] As this court noted in State v. Tabone, supra, 279 Conn. 532 n.10, both the defendant and the state had agreed during plea negotiations to a total effective sentence of ten years incarceration followed by ten years of special parole.

[11] Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[12] General Statutes (Rev. to 1999) § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (6) for a class C felony, a term not less than one year nor more than ten years . . . (7) for a class D felony, a term not less than one year nor more than five years . . . ."

sentence of imprisonment for sexual assault in the second degree to ten years. . . . Because the defendant was sentenced to ten years of imprisonment and ten years of special parole, [he] maintained that his sentence exceed[ed] the maximum statutory limit and, therefore, [was] illegal. Moreover, [he] claimed that [General Statutes] § 54-128 (c)[13] explicitly prohibited the imposition of such an illegal sentence. See General Statutes § 54-128 (c) ('[t]he total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted'). The defendant conceded, however, that General Statutes (Rev. to 1999) § 54-125e (c)[14] required the trial court to sentence the defendant to a period of special parole of 'not less than ten years . . . .' [He] maintained, nonetheless, that to the extent that §§ 54-125e (c) and 54-128 (c) conflict, 'the benefit should go to the defendant.' The trial court disagreed and concluded that the defendant's sentence was not illegal because § 53a-35a (6) plainly authorized a sentence of ten years of imprisonment, and § 54-125e (c) plainly authorized a sentence of ten years of special parole for the offense

Pursuant to § 53a-71 (b), sexual assault in the second degree is a class C felony.

[13] General Statutes § 54-128 (c) provides: "Any person who, during the service of a period of special parole imposed in accordance with subdivision (9) of subsection (b) of section 53a-28, has been returned to any institution of the Department of Correction for violation of such person's parole, may be retained in a correctional institution for a period equal to the unexpired portion of the period of special parole. The total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of imprisonment authorized for the offense for which the person was convicted."

[14] General Statutes (Rev. to 1999) § 54-125e (c) provides in relevant part: "The period of special parole shall be not less than one year nor more than ten years except that such period shall be not less than ten years nor more than thirty-five years for a person convicted of a violation of subdivision (2) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b . . . ."

of sexual assault in the second degree. Further, the trial court concluded that §§ 54-125e (c) and 54-128 (c) do not conflict because § 54-125e (c) unambiguously 'carves out an exception [to the maximum statutory limit] for sex offenses.' " (Citation omitted.) *State* v. *Tabone*, supra, 279 Conn. 530–32. Thereafter, the trial court denied the defendant's motion to correct the sentence, and the defendant's first appeal followed. Id., 532.

In the first appeal, the defendant renewed the claims he had raised before the trial court and also claimed that "his sentence violate[d] the double jeopardy clause of the fifth amendment to the United States constitution because it 'constitutes cumulative multiple punishments exceeding what the legislature intended' for the offense of sexual assault in the second degree." Id. This court concluded that "the defendant's sentence violates § 54-128 (c) because the total length of the term of imprisonment and term of special parole combined exceed[ed] the maximum term of imprisonment authorized for sexual assault in the second degree." Id., 533. The court recognized that "an irreconcilable conflict exists between the sentencing requirements of §§ 54-125e (c) and 54-128 (c)"; id., 543; concluding that, "when the sentencing provisions of §§ 54-125e (c) and 54-128 (c) conflict, the legislature intended the maximum statutory limit in § 54-128 (c) to control." Id., 544. Accordingly, this court remanded the case for resentencing "in accordance with *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), and *State* v. *Miranda*, 260 Conn. 93, 127–30, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002)."[15] *State* v. *Tabone*, supra, 544.

[15] Subsequent to our decision in *State* v. *Tabone*, supra, 279 Conn. 527, but prior to resentencing, the defendant filed a motion to correct an illegal sentence with respect to the conviction of risk of injury to a child on the ground that the five year period of special parole violated the requirement of § 54-125e, which set forth a minimum period of ten years special parole for that particular crime. The defendant requested that the court resentence the defendant to five years of incarceration to run concurrently with his

On remand, the trial court first recognized that *State* v. *Raucci*, supra, 21 Conn. App. 557, and *State* v. *Miranda*, supra, 260 Conn. 93, were applicable to the defendant's sentence, and therefore, this court had authorized it to impose a sentence closely approximating the defendant's original sentence, which had included a period of supervised release by way of special parole, provided that it did not exceed the parameters imposed by the original sentence. The trial court concluded, however, that it could not impose special parole because the minimum ten year special parole period had been determined to be illegal by this court. The trial court discussed probation as an alternate form of supervised release but expressed the concern that a violation of probation could expose the defendant to incarceration for the full term of his suspended sentence, even on the last day of probation, thereby enlarging his sentence, whereas a violation of special parole would have exposed him to incarceration only for the remainder of the special parole period. To address this concern, State's Attorney John A. Connelly submitted a written agreement to the court under which he committed that, if the court were to sentence the defendant to a term of probation instead of special parole and the defendant thereafter violated his probation, the state would seek incarceration only for the remainder of the probationary period, rather than the full term of the suspended sentence.[16] In reliance on this agreement,

other sentences. Argument on the motion to correct was continued to the time of the defendant's resentencing proceeding, at which he was resentenced on the conviction of risk of injury to a child, as well as on his other two crimes.

[16] The agreement provides as follows: "As [s]tate's [a]ttorney for the [j]udicial [d]istrict of Waterbury, I hereby agree that:

"(1) If [the defendant] is resentenced on this matter to a term or terms which include ten years of incarceration followed by ten years execution suspended and ten years of probation, in lieu of the ten years of incarceration and ten years of special parole found illegal by the court in *State* v. *Tabone*, [supra, 279 Conn. 527]; and

"(2) If [the defendant] is found guilty of a violation of such probation; then the state's attorney's office will seek a maximum sentence on the

the trial court imposed a total effective sentence of twenty years incarceration, execution suspended after ten years, with ten years of probation. Specifically, the defendant was sentenced as follows: (1) for sexual assault in the second degree, ten years incarceration; (2) for sexual assault in the third degree, five years incarceration, execution suspended, with ten years of probation, to run consecutively to count one; (3) for risk of injury to a child, five years incarceration, execution suspended, with ten years of probation, to run consecutively to counts one and two. The court also imposed the same conditions on the defendant that had been imposed in his previous sentence, including enrollment in an outpatient sex offender treatment program. See footnote 9 of this opinion. This appeal followed.

I

The defendant first claims that his new sentence is illegal because the ten year period of probation unconstitutionally enlarged his original sentence in violation of his due process rights under the federal and state constitutions. In support of this claim, he contends, inter alia, that, because the terms of incarceration following violations of probation and special parole are calculated differently, he could be exposed to a significantly longer period of incarceration from a probation violation than from a violation of special parole, thereby exceeding the confines of his original sentence.[17] The

violation of probation which will not exceed the number of days that [the defendant] has remaining on his probation at the date of the violation rather than the full period of the suspended sentence.

"The object of this agreement is to fulfill the intentions of all involved in the original sentence agreement in a legal manner and it is my intent that current and future members of this [s]tate's [a]ttorney's office abide by this agreement."

We note that the agreement is signed only by State's Attorney Connelly, and not the defendant. In fact, the agreement does not designate a space for the defendant to sign.

[17] The defendant also claims that his sentence was unconstitutionally enlarged because, pursuant to General Statutes § 53a-32a, a failure to admit guilt during any sex offender treatment program automatically would result

state claims that its agreement to seek incarceration only for the time remaining in the probationary period prevents the defendant from being exposed to additional incarceration if he violates his probation, and thus his new sentence is within the parameters of the original one. We agree with the defendant.

A

We begin our analysis by setting forth the legal principles that govern the resolution of the defendant's claim and the appropriate standard for our review. Our rules of practice permit "[t]he judicial authority [to] at any time correct an illegal sentence . . . ." Practice Book § 43-22. "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory"; (internal quotation marks omitted) *State* v. *Tabone*, supra, 279 Conn. 534; and, following a successful challenge to the legality of a sentence, the case may be remanded for resentencing. Id.

This court has held that, when a case involving multiple convictions is remanded for resentencing, the trial court is limited by the confines of the original sentence in accordance with the aggregate package theory set forth in *State* v. *Raucci*, supra, 21 Conn. App. 563, and later adopted by this court in *State* v. *Miranda*, supra, 260 Conn. 129–30. In *Miranda*, this court recognized that " 'the defendant, in appealing his conviction and

in a violation of probation, which in turn would expose him to the full suspended term of incarceration. In response, the state contends that § 53a-32a does not result in an automatic revocation of probation and that there is no practical difference between probation and special parole for defendants who are ordered to attend an outpatient sex offender treatment program because failure to admit guilt likely would result in a violation, albeit discretionary, of special parole. Because we conclude that the substitution of probation for special parole illegally enlarged the defendant's sentence, we express no opinion on this issue.

punishment, has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety. More significantly, the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent.' " *State* v. *Miranda*, supra, 129, quoting *State* v. *Raucci*, supra, 562. Accordingly, "the [resentencing] court's power under these circumstances is limited by its original sentencing intent as expressed by the original total effective sentence . . . . It may, therefore, simply eliminate the sentence previously imposed for the vacated conviction, and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the sentence for the vacated conviction. The guiding principle is that the court may resentence the defendant to achieve a rational, coherent [sentence] in light of the remaining convictions, as long as the revised total effective sentence does not exceed the original." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 129–30, quoting *State* v. *Raucci*, supra, 563. The determination of whether the defendant's new sentence exceeds his original sentence is a question of law over which our review is plenary. Cf. *State* v. *Mungroo*, 104 Conn. App. 668, 684, 935 A.2d 229 (2007) ("[when] . . . the issue is whether the sentence exceeds relevant statutory maximum limits, the issue is one of law, and we afford it plenary review"), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

With these principles in mind, we turn to the question of whether the trial court's substitution of a period of

probation for the period of special parole originally imposed exceeds the original sentence. Pursuant to § 54-128 (c), when a defendant violates special parole, he is subject to incarceration only for "a period equal to the unexpired portion of the period of special parole." Thus, for a violation that occurs on the final day of the defendant's special parole term, the defendant would be exposed to one day of incarceration. Special parole, therefore, exposes a defendant to a decreasing period of incarceration as the term of special parole is served. On the other hand, when a defendant violates his probation, the court may revoke his probation, and if revoked, "the court shall require the defendant to serve the sentence imposed or impose any lesser sentence." General Statutes (Rev. to 1999) § 53a-32 (b) (4). Accordingly, if the defendant in the present case were to violate his probation on the final day of his ten year term, he would be exposed to the full suspended sentence of ten years incarceration.[18] Thus, in contrast to a term of special parole, the defendant is exposed to incarceration for the full length of the suspended sentence, with no decrease in exposure as the probationary period is served, for the entirety of the probationary period.[19] We conclude, therefore, that the substitution of probation for special parole effectively has enlarged the defendant's sentence by exposing him to incarceration for

[18] The state contends that the defendant's claim is not ripe for review because he has not violated probation, and may never do so, and thus has not experienced any negative consequences as a result of this new sentence. We reject this claim because, as we previously have noted, "[t]he judicial authority may at any time correct an illegal sentence . . . ." Practice Book § 43-22; *State* v. *Tabone*, supra, 279 Conn. 544 n.17.

[19] We note that the trial court and the parties were fully aware of this possibility. Indeed, at the sentencing proceeding, the trial court noted: "Now, I understand that if [the defendant] violates on the last day of his probation, there could be ten years coming into play, which is not the bargain that we had way back . . . . Okay, the only way this can work is if the state's attorney agreed that while [the defendant] was on probation, if in fact he violated probation—the maximum penalty the state could look at would be the remaining time that he has on probation."

an additional ten year period in violation of his due process rights.[20]

The state claims that it has rectified this defect, however, by agreeing to limit its recommendation for incarceration, in the event of a violation of probation, to the remaining probationary period and points to the doctrine of the law of the case to shield the defendant from an enlargement of his sentence. This contention is unavailing. The principal flaw in the state's argument is that, while the agreement may bind the state, it does not bind a future trial court, a fact that the state concedes in its brief. It is well established that sentencing is within the discretion of the trial court, and a trial court cannot be bound by an agreement that removes that discretion. *State* v. *DeJesus*, 10 Conn. App. 591, 603, 524 A.2d 1156 (1987) ("public policy considerations bear against the specific performance of any promise regarding sentencing made by a judge"); see also *United States* v. *Greatwalker*, 285 F.3d 727, 730 (8th Cir. 2002) ("[e]ven when a defendant, prosecutor and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law"). The fact that the trial court explicitly relied on the state's agreement does not remedy this flaw, as the trial court also has no authority to bind a future trial court. A future trial court would remain free to disregard the state's recommendation and impose the full ten year period of the defendant's suspended sentence pursuant to § 53a-32 (b) (4). Consequently, the defendant's sentence has been enlarged

---

[20] Because we conclude that the substitution of probation for special parole enlarges the defendant's sentence beyond that specified under *State* v. *Miranda*, supra, 260 Conn. 129–30, we do not address the defendant's claim that the sentence violates his due process rights because the failure to admit guilt during sex offender treatment automatically results in a violation of probation. We also express no opinion on the defendant's second claim, that the agreement violates the separation of powers clause of the Connecticut constitution.

in violation of his due process rights and, therefore, is illegal.

## B

Because we conclude that the defendant's sentence is illegal, we once again remand the case for resentencing in accordance with the aggregate package theory under *State* v. *Raucci*, supra, 21 Conn. App. 557, and *State* v. *Miranda*, supra, 260 Conn. 93. We are mindful, however, that at the resentencing hearing, the trial court stated that, due to the fact that this court's previous determination that the defendant's term of special parole was illegal and the fact that probation could expose the defendant to additional incarceration, it would be difficult for the trial court to construct a sentence that would closely approximate the defendant's original sentence. Indeed, the state offered its agreement in order to address these difficulties. Because of the apparent confusion in *State* v. *Tabone*, supra, 279 Conn. 527, a problem likely to arise on remand, and to provide some guidance on this matter, we next address the appropriate means to resentence the defendant. See *State* v. *Arroyo*, 284 Conn. 597, 601 n.3, 935 A.2d 975 (2007) (addressing issues likely to arise on remand); *State* v. *Randolph*, 284 Conn. 328, 331 n.2, 931 A.2d 939 (2007) (same).

We note that the resolution of this question requires an analysis of the relevant sentencing statutes, to which we apply familiar principles of statutory construction. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the

text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, supra, 279 Conn. 534–35. The construction of a statute presents a question of law, over which we exercise plenary review. Id., 534.

Three statutes govern the sentence at issue in the present appeal. Because the defendant was convicted of risk of injury to a child and sexual assault in the second degree, both of which are class C felonies, and of sexual assault in the third degree, a class D felony, his sentences are controlled by § 53a-35a, which sets forth the sentencing parameters for those classes of felonies. See footnotes 2, 3 and 4 of this opinion. Under § 53a-35a, class C felonies are subject to a minimum prison sentence of one year and a maximum prison sentence of ten years, and class D felonies are subject to a minimum prison sentence of one year and a maximum prison sentence of five years. See footnote 12 of this opinion. Additionally, § 54-128 (c) requires that, when both special parole and a prison sentence are imposed, the combination of those two sentences cannot exceed the statutory maximum prison sentence set forth in § 53a-35a. See footnote 13 of this opinion. Finally, § 54-125e (c) requires that, for certain convictions including the three offenses committed by the defendant, special parole, if imposed, must be for a minimum term of ten

years to a maximum of thirty-five years. See footnote 14 of this opinion.

As this court recognized in *State* v. *Tabone*, supra, 279 Conn. 543, the interaction of these three statutes results in the following conflict: "[T]he trial court was required to sentence the defendant to a minimum of one year of imprisonment under § 53a-35a (6), and to a minimum of ten years of special parole under § 54-125e (c). The total length of the minimum term of imprisonment and the minimum period of special parole combined amounts to eleven years. As such, the trial court was required to impose a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. At the same time, pursuant to § 54-128 (c), the trial court was prohibited from imposing a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. Accordingly, under the circumstances of the present case, an irreconcilable conflict exists between the sentencing requirements of §§ 54-125e (c) and 54-128 (c)." This court concluded, however, in reliance on the legislative history surrounding the enactment of these statutes, that, when §§ 54-125e (c) and 54-128 (c) conflict, the legislature intended the statutory mandatory maximum sentence under § 54-128 (c) to control. Id., 544.

Although we did not state this point expressly in *State* v. *Tabone*, supra, 279 Conn. 544, a necessary corollary to this conclusion is that § 54-125e (c) can be given effect only to the extent that it does not conflict with § 54-128 (c). It is axiomatic that the legislature is presumed not to have intended to enact conflicting legislation, and that, in the absence of a construction that harmonizes the two, both statutes can be given effect only when they do not conflict. See *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 541–43, 494

A.2d 555 (1985) ("We are entitled to presume that, in passing a statute, the legislature not only did so with knowledge of the existing statutes but also that it did not intend to enact a conflicting statute. . . . [W]e recognize, however, that we cannot assume that a legislative enactment is devoid of purpose. . . . [Therefore, the conflicting statute] still enjoys vitality where appropriate." [Citations omitted; internal quotation marks omitted.]). Consequently, one of the statutes cannot be given effect under the circumstances of the present case. Because we have resolved the conflict in favor of § 54-128 (c); *State* v. *Tabone,* supra, 544; it necessarily follows that § 54-125e (c) must give way.

That is not to say, however, that § 54-125e (c) in its entirety must fall. It is well established that, because we presume that the legislature does not intend to draft meaningless provisions, we are bound to harmonize otherwise conflicting statutes to the maximum extent possible without thwarting their intended purpose. *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); see also *State* v. *Scott,* 256 Conn. 517, 538–39, 779 A.2d 702 (2001) ("[c]onstruction should not exclude common sense so that absurdity results and the evident design of the legislature is frustrated" [internal quotation marks omitted]); *Rivera* v. *Commissioner of Correction,* 254 Conn. 214, 242, 756 A.2d 1264 (2000) (noting court's duty to reconcile and give concurrent effect to conflicting statutes where possible). Consequently, we must seek a construction that gives effect to the apparent legislative intent while minimizing the damage to the conflicting statute.

As we noted in *State* v. *Tabone,* supra, 279 Conn. 540, the legislature intended to permit the imposition of special parole as "a sentencing option which ensures intense supervision of convicted felons after [they are] released to the community and allows the imposition of parole stipulations on the released inmate." At the

same time, the legislature intended to "prevent the trial court from sentencing a defendant to a term of imprisonment and to a period of special parole, the total combined length of which exceeds the maximum sentence of imprisonment for the offense for which the defendant was convicted." Id., 541–42. It is clear, therefore, that the legislature intended that special parole, as a form of supervised release, should be available to trial courts, provided that its imposition, in combination with a term of incarceration, does not exceed the maximum statutory period of incarceration permitted by law. To effectuate the intent of the legislature and to resolve the conflict, therefore, and following the reasoning of this court in *Tabone*, the provision specifying a minimum period of ten years special parole must be rendered permissive, thereby allowing trial courts to impose a period of supervised release in combination with a term of incarceration.[21]

Furthermore, we note that the legislature, in apparent recognition of the confusion it had created upon enacting § 54-125e (c), amended that statute shortly after its enactment to remove the mandatory minimum period of special parole. The mandatory minimum of ten years special parole for certain sexual assault convictions had been enacted by the legislature with the passage of No. 98-234, § 3, of the 1998 Public Acts,

---

[21] The dissent notes that in *State* v. *Tabone*, supra, 279 Conn. 537, we acknowledged that the plain language of § 54-125e (c) required a sentence of ten years of special parole and suggests that this statement indicates that we did not intend for the trial court to be free to sentence the defendant to fewer than ten years of special parole. Seven pages later in the same opinion, however, we determined that the sentencing provisions of § 54-128 (c) control over those of § 54-125e (c). Id., 544. In accordance with this holding, therefore, § 54-125e (c) cannot be interpreted in accordance with its plain meaning but must be construed to give effect to the intent of the legislature. See *State* v. *Ayala*, 222 Conn. 331, 345, 610 A.2d 1162 (1992) ("[s]tatutory language is to be given its plain and ordinary meaning *unless such meaning is clearly at odds with the legislative intent*" [emphasis added; internal quotation marks omitted]).

effective October 1, 1998. The following year, during a special session of the legislature in June, 1999, the legislature removed that mandatory minimum and replaced it with language that gave courts discretion to impose sentences of special parole in excess of ten years for those sexual assault convictions. See Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52 (amending § 54-125e [c] to provide in relevant part that "[t]he period of special parole shall be not less than one year nor more than ten years except that such period may be for more than ten years for a person convicted of a violation of subdivision [2] of section 53-21, section 53a-70, as amended by this act, 53a-70a, as amended by this act, 53a-70b, 53a-71, 53a-72a or 53a-72b, as amended by this act").[22]

In sum, we conclude that the ten year mandatory minimum for special parole under § 54-125e (c) does not apply to resentencing in the present case, and the trial court may apply §§ 53a-35a and 54-128 (c) in a manner such that the new total effective sentence does not exceed the defendant's original total effective sentence of ten years of incarceration, followed by ten

---

[22] To be clear, we note that in the present case, we do not rely on subsequent legislative history to support our construction of the statutes. Were we to do so, we would note that this court has recognized that in the criminal context, the use of subsequent legislative history to discern legislative intent at the time of enactment must be viewed with skepticism because of fair notice concerns. *State* v. *Cote*, 286 Conn. 603, 624 n.14, 945 A.2d 412 (2008) ("[w]e also note that, although we have on occasion looked to the subsequent history of a statute to determine legislative intent . . . such a practice would be inappropriate when construing a penal statute wherein the construction proposed by the state raises concerns of fair notice" [citation omitted]). In the present case, however, these concerns are not implicated; because the trial court is still bound by the original sentence, there is no issue of fair notice to the defendant, as he may not be sentenced beyond the sentence to which he originally had agreed. Cf. *State* v. *Kozlowski*, 199 Conn. 667, 682, 509 A.2d 20 (1986) (rejecting defendant's fair notice claim for conflicting statutes, despite fact that defendant was sentenced to stiffer penalty, because penalties had been spelled out clearly in both relevant public acts).

years of special parole.[23] Accordingly, the defendant

[23] The dissent contends that the trial court is limited, upon resentencing, to the original ten year period of incarceration because the special parole period originally imposed was part of a sentence that this court found illegal in *State* v. *Tabone*, supra, 279 Conn. 544, in light of the conflict between §§ 54-125e (c) and 54-128 (c). Respectfully, we disagree.

The aggregate package theory, adopted in *State* v. *Miranda*, supra, 260 Conn. 129–30, expressly authorizes the trial court to resentence the defendant on each of his convictions, provided that the new sentence does not exceed the original illegal sentence previously imposed. Under this theory, "the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent. . . . Accordingly . . . the [resentencing] court's power under these circumstances is limited by its original sentencing intent as expressed by the original total effective sentence, and, furthermore . . . this power is permissive, not mandatory. Although the court may reconstruct the sentencing package to conform to its original intent, it is not required to do so. It may, therefore, simply eliminate the sentence previously imposed for the vacated conviction, and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the sentence for the vacated conviction. *The guiding principle is that the court may resentence the defendant to achieve a rational, coherent [sentence] in light of the remaining convictions, as long as the revised total effective sentence does not exceed the original.* [State v. Raucci, supra, 21 Conn. App.] 563, quoting *United States* v. *Bentley*, 850 F.2d 327, 328 (7th Cir.), cert. denied, 488 U.S. 970, 109 S. Ct. 501, 102 L. Ed. 2d 537 (1988)." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Miranda*, supra, 260 Conn. 129–30.

We further explained in *Miranda* that "[i]t is axiomatic that a trial court has wide discretion to tailor a just sentence in order to fit a particular defendant and his crimes, as long as the final sentence falls within the statutory limits. . . . This same wide sentencing discretion equally applies to a trial court's restructuring of a sentencing plan for a defendant who has been convicted in a multiple count case and who faces a permissible range of punishment based on the individual counts. [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the . . . court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture . . . within applicable constitutional and statutory limits, if that appears necessary in order to ensure

may be sentenced to a period of special parole unfettered by a mandatory minimum period, provided that the combination of the defendant's term of incarceration and term of special parole does not exceed the statutory maximum set forth by § 54-128 (c). By way of example, the defendant could be sentenced to a total effective sentence of ten years incarceration followed by nine years of special parole as follows: (1) for sexual assault in the second degree, eight years incarceration; (2) for sexual assault in the third degree, one year incarceration, to be served consecutively to the sentence for sexual assault in the second degree; (3) for risk of injury to a child, one year incarceration followed by nine years of special parole, to be served consecutively to the sentences for sexual assault in the second and third degrees. This would result in a total effective sentence of ten years incarceration, followed by nine years of special parole. We do not, however, direct the trial court to impose any particular sentence, but leave to that court, in its discretion, to fashion an appropriate sentence in accordance with *State* v. *Miranda,* supra, 260 Conn. 93.

## II

Although our conclusion that the defendant's sentence was enlarged unconstitutionally when probation was substituted for special parole is dispositive, we nonetheless address the defendant's claim that the resentencing on his conviction for sexual assault in the third degree and risk of injury to a child violated the

---

that the punishment still fits both crime and criminal." (Internal quotation marks omitted.) Id., 130, quoting *State* v. *Raucci,* supra, 21 Conn. App. 563–64.

In light of these principles, it is clear that, on resentencing, the trial court must fashion a sentence that does not exceed the original sentence of ten years incarceration followed by ten years of special parole. The fact that a portion of the sentence was found to be illegal is irrelevant. So long as the new sentence does not exceed the original, the trial court is free to sentence the defendant at its discretion.

guarantee against double jeopardy under the United States and Connecticut constitutions because that issue is likely to arise on remand. *State* v. *Arroyo*, supra, 284 Conn. 601 n.3. Specifically, the defendant contends that the trial court originally had sentenced him on the crimes of sexual assault in the third degree and risk of injury to a child to serve five years incarceration, execution suspended, and five years of special parole, with each sentence to be served concurrently with each other and with the sentence of ten years incarceration on his conviction for sexual assault in the second degree. He claims that, because he began serving his sentence on November 17, 1999, his sentences on his conviction for sexual assault in the third degree and risk of injury to a child had been served prior to resentencing. Because his new sentence includes components related to the conviction of those crimes, he asserts that his double jeopardy rights against multiple punishments have been violated.

In response, the state contends that, because the defendant's successful challenge to his original sentence vacated all of the sentences against him, he has not suffered multiple punishments for the same offense. The state also asserts that, because the sentences on the conviction of sexual assault in the third degree and risk of injury to a child were part of a total sentencing package, the court on remand could reconstruct the entire sentencing package without violating double jeopardy. We agree with the state.

As a threshold matter, claims of double jeopardy involving multiple punishments present a question of law to which we afford plenary review. *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009); *State* v. *Culver*, 97 Conn. App. 332, 336, 904 A.2d 283 (2006), cert. denied, 280 Conn. 935, 909 A.2d 961 (2006). "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same

offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. . . .

"We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Bletsch,* 281 Conn. 5, 27, 912 A.2d 992 (2007); see also, e.g., *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by *Alabama* v. *Smith,* 490 U.S. 794, 798–99, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). It is the third protection that is implicated in this appeal.

It is well established that resentencing a defendant does not trigger double jeopardy concerns when the original sentence was illegal or erroneous. *State* v. *Langley,* 156 Conn. 598, 601–602, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969). Jeopardy does not attach until the avenues for challenging the validity of a sentence have been exhausted, and, therefore, "resentencing has repeatedly been held not to involve double jeopardy when the first sentence was, for some reason, erroneous or inconclusive. *Mathes* v. *United States,* 254 F.2d 938, 939 (9th Cir. [1958]); *Robinson* v. *United States,* 144 F.2d 392, 397 (6th Cir. [1944]), [aff'd, 324 U.S. 282, 65 S. Ct. 666, 89 L. Ed. 944 (1945)]; *McCleary* v. *Hudspeth,* 124 F.2d 445, 447 (10th Cir. [1942]), cert. denied, 316 U.S. 670, 62 S. Ct. 1043, 86 L. Ed. 1745 [1942]; 21 Am. Jur. 2d 232, Criminal Law, § 167 [1965]; see note, 97 A.L.R. 160, 162 [1935]. 'Sentencing should not be a game in which a wrong move by the judge means immunity for the pris-

oner.' *King* v. *United States*, 98 F.2d 291, 296 (D.C. Cir. [1938])." *State* v. *Langley*, supra, 602.

In the specific context of a remand for resentencing when a defendant successfully challenges one portion of a sentencing "package," the United States Supreme Court has held that a trial court may resentence a defendant on his conviction of the other crimes without offending the double jeopardy clause of the United States constitution. *Pennsylvania* v. *Goldhammer*, 474 U.S. 28, 29–30, 106 S. Ct. 353, 88 L. Ed. 2d 183 (1985). Indeed, the resentencing court is free to restructure the defendant's entire sentencing package, even for those components assigned to convictions that have been fully served, as long as the overall term has not expired, without offending double jeopardy. *United States* v. *Triestman*, 178 F.3d 624, 631 (2d Cir. 1999); see, e.g., *United States* v. *Alton*, 120 F.3d 114, 116 (8th Cir. 1997), cert. denied, 522 U.S. 976, 118 S. Ct. 433, 139 L. Ed. 2d 332 (1997) (same); *United States* v. *Benbrook*, 119 F.3d 338, 340–41 (5th Cir. 1997) (holding that defendant that challenges one conviction has no legitimate expectation of finality in other portions of original sentencing package, even if he already has served term of incarceration associated with other parts); *United States* v. *Smith*, 115 F.3d 241, 247–48 (4th Cir.) (holding that court can resentence defendant on one part of sentencing package after original term has been served so long as defendant has not yet finished serving entire sentence on all parts of sentencing package), cert. denied, 522 U.S. 922, 118 S. Ct. 315, 139 L. Ed. 2d 244 (1997); *United States* v. *Rico*, 902 F.2d 1065, 1068–69 (2d Cir.) (holding that District Court may correct sentence to conform to plea agreement without violating double jeopardy, even though defendant already had been released from prison, because defendant was still serving five year term of supervised release), cert. denied, 498 U.S. 943, 111 S. Ct. 352, 112 L. Ed. 2d 316 (1990).

In light of these principles, we conclude that the defendant's resentencing for the crimes of sexual assault in the third degree and risk of injury to a child did not violate double jeopardy. The defendant has challenged only the legality of his sentences, not the validity of his conviction. Consequently, the trial court was free to refashion the entire sentence for each of the crimes within the confines of the original package without violating double jeopardy, as long as the entire sentence had not been fully served. The fact that certain component parts of the total sentence had "expired" is irrelevant. Moreover, the defendant's sentences all had been vacated as a result of his successful challenges to them. See *State* v. *Miranda,* supra, 260 Conn. 129 ("the defendant, in appealing his conviction and punishment, has voluntarily called into play the validity of the entire sentencing package and, thus, the proper remedy is to vacate it in its entirety" [internal quotation marks omitted]). Resentencing, therefore, did nothing more than place the defendant in the same position he originally had occupied when he entered his guilty plea. *United States* v. *Triestman,* supra, 178 F.3d 631. We therefore reject the defendant's double jeopardy claim.

The judgment is reversed and the case is remanded for resentencing according to law.

In this opinion NORCOTT and ZARELLA, Js., concurred.

SCHALLER, J., with whom VERTEFEUILLE, J., joins, concurring in part and dissenting in part. This case presents the question of what steps our law permits a court to take in an effort to reconcile criminal statutes that are in conflict to the extent that the statutory scheme is rendered unworkable. General Statutes § 1-

2z[1] authorizes the judiciary to determine the meaning of a statute or of a statutory scheme in a manner that does not yield "unworkable" results. If, however, after resort to traditional methods of statutory construction, two criminal statutes cannot be reconciled, that is, the plain language of both statutes cannot be given effect, does the court have authority to create a workable interpretation of one of the statutes, when that interpretation is at odds with the statute's plain meaning? Because I conclude that the majority, in its admirable effort to resolve the conundrum before us, has exceeded its authority in the method that it has applied to escape the statutory morass, I respectfully dissent.[2] In part I of this dissent, I will address how the majority, in effect, overrules sub silentio our decision in *State* v. *Tabone*, 279 Conn. 527, 902 A.2d 1058 (2006), and, as a result, creates a precedent that is likely to bring uncertainty to the future interpretation of our criminal statutes in addition to placing a burden on the defendant in this case, John Tabone. In part II, I will demonstrate that, although there is no optimal remedy for the present statutory predicament, the only suitable remedy under the circumstances is to rescind the original plea bargain and to permit the defendant to plead anew.

I

It is beyond dispute that the statutory scheme regarding special parole was in a state of irreconcilable conflict at the time of the defendant's alleged criminal conduct.[3] General Statutes (Rev. to 1999) § 54-125e (c)

---

[1] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[2] I join in parts I A and II of the majority opinion.

[3] We generally have applied the law in existence on the date of the offense. *In re Daniel H.*, 237 Conn. 364, 377, 678 A.2d 462 (1996).

provides in relevant part that: "The period of special parole shall be not less than one year nor more than ten years except that such period shall be not less than ten years nor more than thirty-five years for a person convicted of a violation of subdivision (2) of section 53-21 . . . 53a-71 . . . [or] 53a-72a . . . ."[4] At the same time, General Statutes § 54-128 (c) provides that "[t]he total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted." In *Tabone*, we recognized that "the trial court was required to sentence the defendant to a minimum of one year of imprisonment under [General Statutes] § 53a-35a (6), and to a minimum of ten years of special parole under § 54-125e (c). The total length of the minimum term of imprisonment and the minimum period of special parole combined amounts to eleven years. As such, the trial court was required to impose a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. At the same time, pursuant to § 54-128 (c), the trial court was prohibited from imposing a combined term of imprisonment and period of special parole that exceeds the maximum sentence of imprisonment for sexual assault in the second degree. Accordingly, under the circumstances of the present case, an *irreconcilable conflict* exists between the sentencing requirements of §§ 54-125e (c) and 54-128 (c)." (Emphasis added.) *State* v. *Tabone*, supra, 279 Conn.

---

[4] We recognized in *State* v. *Tabone*, supra, 279 Conn. 532 n.9, that General Statutes (Rev. to 1999) § 54-125e (c) was the applicable revision of the statute. We determined that although the statute had been amended in 1999; see Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52; that amendment did not apply because the defendant was convicted of conduct that allegedly occurred before October 1, 1999, when the amendment took effect. Subsequent references to § 54-125e are to the 1999 revision, unless noted otherwise.

543. In resolving the irreconcilable conflict we concluded that "when the sentencing provisions of §§ 54-125e (c) and 54-128 (c) conflict, the legislature intended the maximum statutory limit in § 54-128 (c) to control." Id., 544.

In contrast to our well reasoned conclusion in *State* v. *Tabone*, supra, 279 Conn. 543–44, that an irreconcilable conflict exists between §§ 54-125e (c) and 54-128 (c), and that, as a result, § 54-125e (c) must yield to § 54-128 (c), the majority now concludes, in effect, that no such irreconcilable conflict actually existed because a "necessary corollary" to our earlier decision in *Tabone*, was that "the defendant may be sentenced to a period of special parole unfettered by a mandatory minimum period, provided that the combination of the defendant's term of incarceration and term of special parole does not exceed the statutory maximum set forth by § 54-128 (c)." I respectfully submit that such an interpretation is not supported either by our decision in *Tabone* or by our broader jurisprudence.[5]

First, we did not mention in *Tabone* that the trial court was free to sentence the defendant to fewer than ten years special parole irrespective of the plain and unambiguous language of § 54-125e to the contrary. Equally important is that the analysis in *Tabone* suggests precisely the opposite. In our statutory interpretation, we determined that "pursuant to the *plain language* of § 54-125e (c), the trial court was *required* to sentence the defendant to a minimum of ten years of special parole. Accordingly, *the defendant's sentence of ten years of special parole is authorized by, and, indeed, required by, § 54-125e (c)*."[6] (Emphasis added.) *State* v. *Tabone*, supra, 279 Conn. 537.

_____

[5] Neither the state nor the defendant sought the remedy set forth by the majority.

[6] So clear was our decision that § 54-125e (c) *required* a minimum ten year sentence of special parole, that subsequent to publication of *Tabone* in the Connecticut Law Journal, the defendant filed a motion to correct an

Second, it appears that the majority has now settled on the necessary corollary theory for interpreting *Tabone* because of what it perceives as the lack of other suitable remedies. This position overlooks the existence of several remedies, however imperfect they may be, that would be available to the trial court upon remand. See part II of this dissenting opinion. More importantly, however, I submit that the majority's suggestion of a necessary corollary to our decision in *Tabone* should not be given effect in the absence of legal authority that would permit us to give § 54-125e (c) a meaning contrary to its plain and unambiguous meaning.[7]

Third, in reaching its conclusion, the majority relies on our presumption that the legislature did not intend to enact conflicting legislation, and the court's authority to "harmonize" statutes where possible. These tools, however, do not justify the majority's result. At the outset, I note that the presumption that the legislature has not enacted conflicting legislation, although an important principle, is just that—*a presumption*. It does not in itself direct a particular result. Like all presumptions, it is capable of being refuted. *Kinney* v. *State*, 285 Conn. 700, 710, 716, 941 A.2d 907 (2008) (despite " 'strong presumption of constitutionality' " statute held unconstitutional). Accordingly, whether the presumption against conflicting statutes can be given controlling

---

illegal sentence on the ground that his sentence of five years special parole with respect to his violation of subdivision (2) of General Statutes (Rev. to 1999) § 53-21 was illegal in light of *Tabone*, because it did not conform with the ten year minimum.

[7] To the extent that the majority relies on our decision in *Tabone* to justify its current interpretation of § 54-125e (c), such reliance, in effect, amounts to a *bootstrapping* approach. It is improper to rely on *Tabone*, which merely identified the conflict, to conclude that *Tabone* acts as a legal basis for authorizing the current interpretation. Had the majority's current interpretation of § 54-125e (c) been addressed in *Tabone*, that opinion likewise would have had to proffer a legal basis to justify that interpretation.

effect depends on whether an independent legal basis can be offered to support it. Although the majority correctly points out that we have in the past reconciled statutes so as not to frustrate the legislative intent, the majority is unable to cite to a case in which we have done so by giving one statute an interpretation that directly contravenes its plain and unambiguous meaning. See *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 242, 756 A.2d 1264 (2000) (court can reconcile and give concurrent effect to two statutes, but only by "fair interpretation").

In addition, the majority refers to a *future* legislative act, wherein the legislature has since amended § 54-125e (c) to remove the ten year mandatory minimum,[8] presumably to validate its conclusion that the trial court, in this case, is free from the mandatory minimum that was in effect at the time of the defendant's crime. Although the majority purports not to rely on this future legislative act to support its statutory interpretation, it nonetheless simultaneously argues that the fair notice concerns that militate against reliance on such acts in criminal cases are not present in this case. Because that argument is relevant only when the court, in fact, seeks to rely on a future legislative act,[9] I will briefly

---

[8] General Statutes (Rev. to 1999) § 54-125e (c), as amended by Public Acts, Spec. Sess., June, 1999, No. 99-2, § 52, provides that "such period may be for more than ten years for a person convicted of a violation of . . . 53a-71 . . . ."

[9] Respectfully, I dispute the majority's contention that fair notice is not at issue here. As the majority itself recognizes, but does not adhere to, "such a practice [is] inappropriate when construing a penal statute wherein the construction proposed by the [majority] raises concerns of fair notice." *State* v. *Cote*, 286 Conn. 603, 624 n.14, 945 A.2d 412 (2008). The majority, however, provides only cursory analysis as to why such reliance does not raise the concerns of fair notice alluded to in *Cote*. That the trial court is bound by the limits of the defendant's plea does not speak to the issue of whether the novel interpretation of a criminal statute contrary to its plain meaning raises issues of fair notice, a point that I will address subsequently.

*State* v. *Kozlowski*, 199 Conn. 667, 682, 509 A.2d 20 (1986), on which the majority relies, is inapposite. In that case, the public act at issue "clearly spelled out [the] increased penalties . . . ." Id. In the present case, the

address why reference to that future legislative act is not proper as a general matter in criminal cases and, in this case, specifically.[10] Retroactive application of a subsequent legislative act has been employed sparingly and only within the civil context. See *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 722, 780 A.2d 1 (2001), quoting *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 701–702, 724 A.2d 1093 (1999). Moreover, even if such reliance were appropriate in the criminal context, our law permits such analysis only when the legislature has *clarified*— as opposed to *changed*—the law. *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, supra, 722 ("whether the legislature intended to change or merely clarify existing law is critical to our decision [whether to look to future legislative amendments]" [internal quotation marks omitted]). The outright elimination of a statutory minimum sentence, I submit, is undeniably a *change* in the law, and not a clarification. Of course, we could nonetheless give effect to the future amendment irrespective of the change in law if the legislature had evinced an intent to do so. In the present case, there is nothing in the language or legislative history that evinces an intent of the legislature to apply the amendment retroactively.[11]

majority supplies § 54-125e (c) with an interpretation that is in direct contrast to its "clearly spelled out" penalties, thus implicating the issue of fair notice.

[10] The subsequent amendment underscores the fact that the statute, at the time of the defendant's conviction, *required* a ten year minimum sentence of special parole.

[11] In *State* v. *Quinet*, 253 Conn. 392, 752 A.2d 490 (2000), we addressed a claim regarding a term of probation and the application of General Statutes (Rev. to 1995) § 53a-29 (e), which, prior to the legislature's amendment of § 54-125e (c), was an almost verbatim equivalent of, and undoubtedly the model for, § 54-125e (c) prior to its creation. In *Quinet*, the defendant claimed that No. 95-142, § 2, of the 1995 Public Acts, which amended General Statutes (Rev. to 1995) § 53a-29 (e) after the defendant's crime to create the imposition of a mandatory minimum sentence of probation for various crimes, could be applied retroactively in the hopes that the trial court could sentence him to a shorter prison term and longer probationary period. Id., 412–13. In reviewing the text and legislative history of the statute, we

Ordinarily, when faced with a similar statutory conundrum, we would look to various tools of statutory interpretation to give meaning to statutes that, on their surface, are in conflict. In *Rivers* v. *New Britain*, 288 Conn. 1, 950 A.2d 1247 (2008), for example, we relied on § 1-2z, which permits the court to look to legislative history when the plain meaning of a statute yields "unworkable results . . . ." In the present case, however, the scant legislative history on the special parole scheme yields no insight that would permit the court to give § 54-125e an interpretation in direct conflict with its plain meaning. In the absence of helpful legislative history, I note that § 1-2z does not further authorize the court, in effect, to recast a statute in order to overcome an irreconcilable conflict. Moreover, on occasion, we have looked to see whether the use of the phrase "shall" is mandatory or directory. In doing so we have stated that "the use of the word 'shall,' though significant, does not invariably create a mandatory duty." *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 152, 561 A.2d 1373 (1989). When negative terminology accompanies the phrase, however, as is the case here, the term

concluded that there was nothing to suggest that the legislature intended for the amendment to be applied retroactively. Id., 414. Thus, we asserted that "[w]e will not give retrospective effect to a criminal statute absent a clear legislative expression of such intent. See, e.g., *State* v. *Parra*, 251 Conn. 617, 625–26, 741 A.2d 902 (1999); *In re Daniel H.*, 237 Conn. 364, 376, 678 A.2d 462 (1996); *State* v. *Crowell*, 228 Conn. 393, 401, 636 A.2d 804 (1994)." *State* v. *Quinet*, supra, 414.

Presumably, the majority relies on the fact that the legislature amended the statute in the subsequent legislative session. Reliance on the amount of intervening time, however, is a subjective consideration and improperly elevates that heretofore unannounced consideration above our well established requirement that the legislature has to evince a clear intent before we apply a change in the law retroactively. *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 325, 920 A.2d 301 (2007) ("[t]he presumption that [a criminal statute] has only prospective effect can be overcome only by a clear and unequivocal expression of legislative intent that the statute shall apply retrospectively"). Silence in the text and silence in the legislative history do not evince a clear and unequivocal expression of legislative intent.

connotes a mandatory action. *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 78, 676 A.2d 819 (1996). Thus, by asserting in § 54-125e (c) that "such period shall be *not less* than ten years" the legislature unmistakably evinced a mandatory requirement. (Emphasis added.)

In short, because our tools of statutory construction cannot resolve the conflict, and reference to future legislative history bears no relevance to the question before us, there is no legal authority to support the *presumption* against conflicting statutes. As a result, we cannot give effect to those provisions of § 54-125e (c) that require a ten year sentence of special parole for a conviction in violation of General Statutes (Rev. to 1999) §§ 53-21 (2), 53a-71 and 53a-72a.[12] Accordingly, because we have no authority to rewrite § 54-125e (c), the solution to this statutory morass lies exclusively in the hands of the legislature, which, in fact, has acted to remedy the conflict since this issue came to light.

In addition to my concerns about the majority's analysis in reaching its conclusion, I am concerned about the potential effects of this decision on the defendant. In short, we cannot give retroactive effect to an unquestionably novel construction of § 54-125e (c) without running afoul of due process. In *Bouie* v. *Columbia*, 378 U.S. 347, 352, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), the United States Supreme Court stated that "[t]here can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory lan-

[12] There also exists an irreconcilable conflict for a violation of General Statutes (Rev. to 1999) § 53a-72b, which, at the time, carried a maximum period of incarceration of five years. See General Statutes (Rev. to 1999) § 53a-35a. On the other hand, there is no conflict with respect to violations of General Statutes (Rev. to 1999) §§ 53a-70, 53a-70a, 53a-70b and 53a-40, all of which then carried a maximum sentence of twenty years or greater. See General Statutes (Rev. to 1999) § 53a-35a.

guage." In determining whether this right has been violated, we have stated that "[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." (Internal quotation marks omitted.) *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 806, 950 A.2d 1220 (2008), quoting *Bouie* v. *Columbia*, supra, 354. Not only is the majority's construction novel, in that it is contrary to the plain meaning of the statute, but it also, in my opinion, operates to the defendant's disadvantage, thereby depriving him of his right to due process. "To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—*and it must disadvantage the offender affected by it* . . . by altering the definition of criminal conduct *or increasing the punishment for the crime* . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lynce* v. *Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997); *State* v. *Parra*, supra, 251 Conn. 626 n.7.

The dispositive issue in determining whether the majority's novel interpretation operates to the defendant's disadvantage is whether the starting point for the due process analysis is ten years incarceration or ten years incarceration with an additional ten years special parole. That is, if we begin our analysis as to whether the new sentence increases the punishment for the crime from the original sentence of ten years imprisonment, with ten years special parole, then a sentence of ten years imprisonment, with nine years special parole clearly does not increase the punishment and would not operate to the defendant's disadvantage. That starting point, however, does not adequately recognize the fact that the original sentence of ten years imprisonment, with ten years special parole was an illegal sentence. Accordingly, I believe it is improper

to analyze a due process inquiry starting from the basis of an illegal sentence. Rather, I contend that the appropriate starting point is the maximum legal sentence, in light of the irreconcilable conflict between §§ 54-125e (c) and 54-128 (c), namely, a sentence of ten years imprisonment. In that event, a sentence that includes nine years of special parole *not otherwise authorized by statute* clearly increases the punishment for the crime and violates the defendant's right to due process of law.

The discussion in footnote 23 of the majority opinion reflects a misunderstanding of the due process question. As I recognize in this dissenting opinion, I agree that under *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), and *State* v. *Miranda*, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002), the trial court is bound only by the original sentencing intent of a period of ten years of incarceration followed by a period of ten years postrelease supervision. That sentencing limit, however, does not speak to the specific question before us, namely, whether the *ten year period of postrelease supervision* can be fulfilled by a period of *special parole*, as opposed to other forms of postrelease supervision. As noted previously, the periods of special parole urged by the majority are not authorized by statute and, therefore, the majority's proposed sentence results in an increase to the defendant's punishment in light of a *legal* sentence inclusive of special parole which, because of the irreconcilable conflict, is simply ten years incarceration. In addition, because the majority has reached its remedy sua sponte, the parties did not have the opportunity to brief the issue of whether the proposed sentence violates the defendant's right to due process.[13]

---

[13] Although my research ultimately leads me to conclude that the majority's remedy violates the defendant's right to due process, I would have permitted the parties to file supplemental briefs on the issue.

In sum, because the majority does not offer an independent legal basis to support the presumption against the enactment of conflicting statutes and, therefore, has not justified adequately its interpretation of § 54-125e (c), which contravenes the plain meaning of that statute, I respectfully dissent.

## II

Because I agree with the majority that the defendant's current sentence is illegal, I next set forth what I believe is the appropriate remedy in light of the unique circumstances of this case. In *State* v. *Tabone,* supra, 279 Conn. 544, we remanded the matter back to the trial court for resentencing in accordance with *Raucci* and *Miranda.* Embodied in that order was the concept that when a sentence imposed as a result of a plea bargain is illegal, the best remedy is to resentence the defendant to a new legal sentence that approximates, as closely as possible, but does not exceed, the original sentencing intent. See *State* v. *Raucci,* supra, 21 Conn. App. 563; see also *United States* v. *VanDam,* 493 F.3d 1194, 1206 (10th Cir. 2007) ("[w]hen . . . the defendant does not seek to withdraw his guilty plea, the less drastic remedy of resentencing appears to be most apt"). It is clear to me, however, that under the sentencing scheme at the time of the defendant's crimes, there is no legal sentence that approximates the original sentencing intent, namely, a period of ten years of incarceration followed by a period of ten years postrelease supervision. Accordingly, in these unusual circumstances, I conclude that the proper remedy is to rescind the defendant's original plea and permit the defendant to plead anew.

In *Santobello* v. *New York,* 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), the United States Supreme Court listed two potential remedies—specific performance or withdrawal of the plea—when a prosecutor

has breached a promise that induced the defendant to make a plea agreement. See also *State* v. *Littlejohn*, 199 Conn. 631, 644, 508 A.2d 1376 (1986) ("fairness ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea"). In his concurring opinion, Justice Douglas stated that "[i]n choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the [s]tate." *Santobello* v. *New York*, supra, 267; see also *State* v. *Rivers*, 283 Conn. 713, 732, 931 A.2d 185 (2007). The present case, however, is distinguishable from *Santobello* and its progeny in two respects. First, we are not presented with the breach of a prosecutor's promise. As in *Santobello*, the typical case involves a prosecutor who, for example, has promised to recommend a particular sentence, but later reneges and recommends a harsher sentence. See, e.g., *Santobello* v. *New York*, supra, 258–59. In the present case, neither party has breached the agreement. Rather, after two separate appeals, the defendant's sentences have been held to be illegal as a matter of statutory and constitutional law. Second, unlike the typical defendant faced with an illegal sentence, the defendant in this case does not explicitly request the opportunity to withdraw his plea.[14] Nor does the defendant seek specific performance. Rather, the defendant makes the extraordinary request that this court strike all periods of supervision from the plea agreement, resulting in a total effective sentence of ten years imprisonment.

I first address the defendant's request to have this court strike the periods of supervision from the plea

[14] The record reveals, however, that the defendant previously requested to withdraw his plea and that he had expressed interest in doing so again at the first resentencing hearing after *Tabone*.

agreement, which would result in a total effective sentence of ten years imprisonment. I agree with the decisions from other jurisdictions that have declined to entertain a similar request because no law or public policy supports such a remedy, and doing so would deprive the state of the benefit of its bargain. In *State ex rel. Gessler* v. *Mazzone*, 212 W. Va. 368, 374, 572 S.E.2d 891 (2002), the West Virginia Supreme Court stated that when a " 'bargain' [becomes] impossible, through mutual mistake regarding statutory realities . . . this [c]ourt cannot condone a resolution, as requested by the [p]etitioner, which would permit him to retain the benefit of his bargain by having six counts dismissed while serving no sentence for the crimes to which he desired to plead guilty. . . . The [p]etitioner cannot choose which portions are advantageous to him and implore this [c]ourt to apply only those certain portions. There is no equity in that result, no semblance of a bargain, and certainly no public policy which would support such a result." See also *State* v. *Parker*, 334 Md. 576, 603, 640 A.2d 1104 (1994) (remedy involving unconditional release from custody deprives state of benefit of its bargain, i.e., certain period of confinement). In the present case, the defendant has pleaded guilty to crimes constituting sexual offenses against a child. Strong public policy considerations militate against directing a sentence that does not contain a period of postincarceration supervision. See *State* v. *Waterman*, 264 Conn. 484, 490, 825 A.2d 63 (2003) (sex offenders' actions cause serious harm to society and some data indicates that such offenders have greater probability of recidivism than other offenders); see also *Doe* v. *Pataki*, 120 F.3d 1263, 1266 (2d Cir. 1997). In sum, although I recognize that a court should accord the defendant's choice of remedy preference, as Justice Cardozo stated in *Snyder* v. *Massachusetts*, 291 U.S. 97, 122, 54 S. Ct. 330, 78 L. Ed. 674 (1934), "justice,

though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." I would, therefore, decline to grant the defendant's request for a remedy that would require this court to strike all postrelease supervision from the plea bargain.[15]

I turn next to my conclusion that the only appropriate remedy under these unique circumstances is to order a rescission of the original plea agreement, thereby placing the parties in their original positions.[16] *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997) ("[t]he validity of plea bargains depends on contract principles"); *Rojas* v. *State*, 52 Md. App. 440, 447, 450 A.2d 490 (1982) ("rescission is a desirable remedy when either party to a plea agreement cannot compel the other party to perform its material promise"). My conclusion to rescind the legally inoperative plea agreement finds support from other jurisdictions faced with similar circumstances. See *Chae* v. *People*, 780 P.2d 481, 486 (Colo. 1989) (illegal sentence recommendation renders agreement invalid and requires guilty plea be vacated); *People* v. *Caban*, 318 Ill. App. 3d 1082, 1087–89, 743 N.E.2d 600 (2001) (proper remedy for legally unfulfillable sentence was rescission because illegal contract is void ab initio); *State ex rel. Gessler* v. *Mazzone*, supra, 212 W. Va. 374 ("[w]here a plea agreement cannot be discharged due to legal impossibility, the entire agreement must be set aside").

Although I recognize that rescission of a plea agreement may result in a manifest injustice if the defen-

---

[15] I recognize, however, that a total effective sentence of ten years incarceration with no postrelease supervision is one of several possible results if the parties were to choose to enter into a second plea bargain or if the parties proceeded to trial.

[16] In its brief, the state argues, in the alternate, that vacating the defendant's plea is the proper remedy if the court finds that the state's agreement is invalid.

dant already has testified or provided evidence to the police that would place him at a severe disadvantage in subsequent plea renegotiations; see *State* v. *Rivers*, supra, 283 Conn. 733–34; the defendant in the present case entered an *Alford*[17] plea to the charges, and, as far as the record reveals, has not provided the police with information that may serve to his later disadvantage. Additionally, I concur with the other jurisdictions that have concluded that there is no double jeopardy bar to retrying the defendant on all of the original charges. "The principle that [the fifth amendment] does not preclude the [g]overnment's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence." *United States* v. *Tateo*, 377 U.S. 463, 465, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964); see also *United States* v. *Greatwalker*, 285 F.3d 727, 730 (8th Cir. 2002) (having found plea agreement void, court held that because illegal sentence prevents both defendant and government from being bound by plea agreement, government may reinstate dropped charges); *Lewis* v. *Warner*, 166 Ariz. 354, 357, 802 P.2d 1053, 1056 (App. 1990) (recognizing that "dismissal of charges prior to trial, as part of a plea agreement or otherwise, does not operate as an acquittal so as to preclude later prosecution" on double jeopardy grounds); *Chae* v. *People*, supra, 780 P.2d 488 (district attorney may reinstate charges against defendant that were previously dismissed under plea agreement); *People* v. *Caban*, supra, 318 Ill. App. 3d 1089–90 (no double jeopardy violation when plea vacated due to legal impossibility); *Dixon* v. *State*, 981 S.W.2d 698, 699 (Tex. App. 1998) (where state, as part of plea bargain agreement, reduces charges against defendant in exchange for guilty plea, and defendant

---

[17] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

successfully challenges conviction, both parties resume their original positions, and no double jeopardy bar to retrying defendant for greater offense).

Under this remedy, of course, the defendant ultimately could receive a sentence harsher than the original sentence contemplated by the plea agreement. *United States* v. *Palladino*, 347 F.3d 29, 35 (2d Cir. 2003) ("what appears to be a 'victory' for [the] defendant in this case could ultimately result in a conviction on remand that carries a longer sentence than that initially imposed"); *United States* v. *Greatwalker*, supra, 285 F.3d 730 ("[The defendant's] success in this appeal may be costly. Because the illegal sentence prevents both [the defendant] and the [g]overnment from being bound by the plea agreement, the [g]overnment may reinstate the dropped charges and proceed to reprosecute the first-degree murder charge.").[18] Nonetheless, because there is no basis in law or policy to either strike the postincarceration supervision or to order the defendant to serve a sentence greater than that permitted by law, I conclude that rescission is the only appropriate remedy.

Accordingly, I respectfully dissent, and would reverse the judgment and remand the case with instructions that the trial court vacate the plea bargain and permit the defendant to plead anew.[19]

---

[18] If the defendant either renegotiates a new plea bargain or goes to trial and is convicted, he must receive credit for time served. If, on the other hand, the defendant proceeds to trial and is acquitted, he may be able to pursue a civil remedy.

[19] I recognize that rescission of the plea agreement may require the state to marshal stale evidence and, more importantly, may require the testimony of a traumatized victim long after the crime. *Arevalo* v. *Farwell*, United States District Court, Docket No. 3:04-cv-00568-ECR-VPC, 2008 WL 820194 (D. Nev. March 24, 2008) (court shied away from withdrawing plea, in part, because state would have to marshal previously traumatized victim of sexual offense years after attack). Although the state principally has argued that we should enforce the plea agreement, in taking the alternate position that a rescission is proper, I assume the state has taken into account the possibility that the victim may be called on to testify.