## STATE OF CONNECTICUT *v.* RONALD BROWN
### (AC 32597)

Bear, Espinosa and Bishop, Js.

Argued September 13, 2011—officially released January 17, 2012

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Suzanne M. Vieux*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Ronald Brown, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant claims that the court's ruling was improper because the court, at the time of sentencing, exceeded its authority by imposing a total effective sentence that included a sixteen year term of special parole. We reverse the judgment of the trial court.

The following undisputed facts are relevant to the present appeal. In 2005, the state charged the defendant under docket number CR-05-0109070 with possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). In 2006, the state charged the defendant under docket number CR-06-0112604 with sale of narcotics in violation of General Statutes § 21a-278 (b).

On January 25, 2007, following plea negotiations between the state and the defendant, the defendant appeared before the court, *Reynolds, J.*, and entered guilty pleas to the aforementioned pending charges. At

that time, the prosecutor summarized the facts underlying the charges. He represented that the conduct underlying the charge of possession of narcotics with intent to sell occurred on July 1, 2005, and that the conduct underlying the sale of narcotics charge occurred on March 6, 2006. The prosecutor set forth the following plea agreement: In exchange for the guilty pleas, the defendant would be sentenced on the sale of narcotics charge, under docket number CR-06-0112604, to a mandatory term of incarceration of five years, followed by a ten year term of special parole, and the defendant would be sentenced on the charge of possession of narcotics with intent to sell, under docket number CR-05-0109070, to a term of incarceration of four years, followed by a six year term of special parole, both sentences to run consecutively. Additionally, in exchange for the defendant's guilty plea as to a charge of reckless driving that was brought under a separate docket number and arose from conduct that occurred on June 12, 2005, the state would request a sentence of unconditional discharge. The prosecutor noted that, as part of the plea agreement, the state would enter a nolle prosequi as to other charges pending against the defendant. The defendant's attorney stated to the court that the prosecutor's representations concerning the plea agreement were consistent with his understanding of that agreement.[1]

Thereafter, the court canvassed the defendant with regard to his guilty pleas. During the canvass, the court inquired as to the defendant's understanding of the sentence to be imposed as follows:

"The Court: Your sentencing agreement with the state is for a total effective sentence of nine years to serve, five of which are a mandatory minimum.

---

[1] At the hearing, the defendant and the prosecutor waived any right to request the preparation of a presentence investigation report.

"The Defendant: Yes.

"The Court: And then that's to be followed by sixteen years of special parole. Do you understand that?

"The Defendant: Yes."

Following the canvass, the court accepted the defendant's pleas as having been freely, voluntarily and intelligently made with the effective assistance of counsel. The court found a factual basis for the pleas, and a finding of guilty entered on the three offenses.

On March 8, 2007, the defendant appeared before the court for sentencing. As he had at the January 25, 2007 hearing, the prosecutor set forth the terms of the plea agreement, and the defendant's attorney stated his agreement with those terms. The court sentenced the defendant according to the plea agreement.[2]

On September 22, 2009, the defendant, as a self-represented party, filed a motion to correct an illegal sentence.[3] The gist of the motion was that the court illegally sentenced him to a sixteen year term of special parole when, in light of the crimes at issue, the maximum term of special parole authorized was ten years.

On July 12, 2010, the sentencing court held a hearing to consider the motion to correct. The defendant, now represented by counsel, argued that the court lacked

[2] Additionally, the record reflects that, in accordance with the plea agreement, the court imposed a sentence of unconditional discharge with regard to the reckless driving count that was brought under docket number MV-05-0443087. The record also reflects that, in accordance with the plea agreement, the state entered a nolle prosequi with regard to several additional charges brought under several docket numbers, including docket numbers CR-05-0109070 and CR-06-0112604.

[3] The defendant brought the motion pursuant to "Practice Book Rule 93-22," a provision that does not exist. The court treated the motion as one properly filed pursuant to Practice Book § 43-22, which governs motions to correct an illegal sentence, and we, likewise, treat the defendant's citation as a scrivener's error.

the authority to sentence him to a term of special parole that exceeded ten years. The defendant argued that although the court imposed consecutive sentences under two docket numbers, it was not authorized to exceed a ten year maximum term of special parole. The defendant argued that any ambiguity with regard to the court's authority to sentence him in the manner that it did should favor the defendant such that the court was required to reduce the term of special parole from sixteen years to ten years. The prosecutor countered that the defendant should not be heard to complain about the severity of the sentence imposed because, at the time of sentencing, he expressed his satisfaction with and acceptance of the plea agreement reached with the state.[4] The court denied the motion to correct, noting that the defendant had bargained for the sentence that included a sixteen year term of special parole. The court opined that the term of special parole was proper because it resulted from consecutive sentences imposed under separate docket numbers.[5] This appeal followed.

On appeal, the defendant reiterates his claim that the sixteen year term of special parole is illegal because it exceeds the ten year maximum period of special parole authorized by General Statutes § 54-125e (c).[6] The

[4] The state does not rely upon a similar argument before this court. We note, nonetheless, that an illegal sentence cannot be given effect, even if the parties at the time of sentencing agreed upon its imposition. See, e.g., *State* v. *Tabone*, 292 Conn. 417, 430, 973 A.2d 74 (2009).

[5] The court did not file a signed transcript of its oral decision denying the defendant's motion, as is required by Practice Book § 64-1 (a). The defendant properly filed a statement under Practice Book § 64-1 (b), to no avail. The lack of a proper statement of decision, however, does not hamper our ability to review the claim raised in this appeal, as we are able readily to identify the ruling under consideration.

[6] Additionally, the defendant argues in his brief to this court that the length of the term of special parole rendered the sentence imposed under each docket number illegal. It appears that this argument is based upon General Statutes § 54-128 (c). Specifically, the defendant asserts that because § 21a-277 (a) authorizes (for a first offense) a maximum term of imprisonment of fifteen years, the four year term of imprisonment imposed by the

defendant urges us to conclude that § 54-125e (c) expressly precludes the sentence imposed or, in the alternative, that the provision is ambiguous, the rule of lenity applies and we must interpret the statute in his favor. The defendant requests that we reverse the judgment denying the motion to correct, declare the sentences imposed to be illegal and remand the case for resentencing.

In opposition, the state contends on appeal that the ten year limitation on a period of special parole under § 54-125e (c) applies to the sentence imposed for each offense or conviction, not to an aggregate sentence for multiple convictions. The state points out that were he not sentenced pursuant to a plea agreement, the defendant would have been subject to being tried separately and sentenced separately under the separate

court combined with the sixteen year term of special parole exposed him to a term of imprisonment that exceeded the punishment authorized by the statute. Likewise, the defendant asserts that because § 21a-278 (b) authorizes (for a first offense) a maximum term of imprisonment of twenty years, the five year term of imprisonment combined with the sixteen year term of special parole exposed him to a term of imprisonment that exceeded the punishment authorized by statute. Although the defendant did not raise this aspect of the illegal sentence claim before the trial court, the defendant has failed to advance any theory upon which this court should consider the claim; he has not asked for any extraordinary level of review of the unpreserved claim.

We do not address this aspect of the defendant's claim for two reasons. First, our resolution of this appeal renders it unnecessary to do so because we conclude that the sixteen year term of special parole cannot stand and remand the case for resentencing. Second, it would be inappropriate to review this aspect of the claim raised for the first time on appeal. "Our rules of practice confer the authority to correct an illegal sentence on the trial court, and that court is in a superior position to fashion an appropriate remedy for an illegal sentence. . . . Furthermore, the defendant has the right, at any time, to file a motion to correct an illegal sentence and raise [this] claim before the trial court." (Citation omitted.) *State* v. *Starks*, 121 Conn. App. 581, 592, 997 A.2d 546 (2010). It is not appropriate to review an unpreserved claim of an illegal sentence for the first time on appeal. See id. (declining to review unpreserved claim of illegal sentence under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 [1989], or plain error doctrine embodied in Practice Book § 60-5).

docket numbers at issue in the present case. Impliedly arguing that the defendant should not benefit from the fact that he was sentenced pursuant to a plea agreement, the state posits that, had the defendant been sentenced separately under each docket number, neither period of special parole at issue here would have violated the ten year limit. The state urges us to look at the sentence imposed for each offense, rather than the aggregate sentence, and to conclude that no illegality exists.

"It is axiomatic that, in a criminal case, the jurisdiction of the sentencing court terminates once a defendant's sentence has begun and a court may no longer take any action affecting a sentence unless it expressly has been authorized to act. . . . Providing such authorization to act, Practice Book § 43-22 states: The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner.

"An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates the defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *Starks*, 121 Conn. App. 581, 585–86, 997 A.2d 546 (2010). The claim here is that the defendant's sentence was illegal. "We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is

illegal by raising the issue on direct appeal or by filing a motion pursuant to [Practice Book] § 43-22 with the judicial authority, namely, the trial court." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006) (*Tabone I*).

A denial of a motion to correct an illegal sentence is reviewed under the abuse of discretion standard. *State* v. *Carter*, 122 Conn. App. 527, 532, 998 A.2d 1217 (2010), cert. denied, 300 Conn. 915, 13 A.3d 1104 (2011); *State* v. *Starks*, supra, 121 Conn. App. 586; *State* v. *Henderson*, 93 Conn. App. 61, 66, 888 A.2d 132, cert. denied, 277 Conn. 927, 895 A.2d 800 (2006). Of course, when the court is called upon to exercise its legal discretion, we must determine whether the trial court correctly interpreted and applied the law. See, e.g., *State* v. *Rios*, 110 Conn. App. 442, 448, 954 A.2d 901 (2008). Here, our review of the court's exercise of discretion requires that we review the court's interpretation of relevant statutory provisions. Insofar as the claim is that the sentence exceeds that authorized by statute, the claim presents an issue of statutory interpretation, which is an issue of law, and we afford it plenary review. See *State* v. *Tabone*, supra, 279 Conn. 534; *State* v. *Garner*, 270 Conn. 458, 478, 853 A.2d 478 (2004).

Because the legislature must delegate sentencing authority to the courts, we focus upon relevant statutory provisions. Our Supreme Court has acknowledged that although "the judicial branch is charged with the responsibility of adjudicating criminal charges and ultimately determining the sentence of incarceration, if any, to be imposed," the courts do not have exclusive authority with regard to sentencing. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 828, 950 A.2d 1220 (2008). The Supreme Court has "acknowledged the legislature's authority to define crimes and the appropriate penalties for them." Id.; see also *State* v. *Truppi*, 182 Conn. 449, 467, 438 A.2d 712 (1980)

("[t]he legislature remains free . . . to define crimes and fix punishments, but once it has acted courts may not exceed their legislative authorization" [internal quotation marks omitted]), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

General Statutes § 53a-28 (b) provides that "when a person is convicted of an offense, the court shall impose one of the following sentences . . . (9) a term of imprisonment and a period of special parole as provided in section 54-125e." Section 54-125e (a) provides in relevant part: "Any person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole shall, at the expiration of the maximum term or terms of imprisonment imposed by the court, be automatically transferred to the jurisdiction of the chairperson of the Board of Pardons and Paroles . . . until the expiration of the period of special parole imposed by the court. The Department of Correction shall be responsible for the supervision of any person transferred to the jurisdiction of the chairperson of the Board of Pardons and Paroles under this section during such person's period of special parole."[7]

Section 54-125e (c) provides: "The period of special parole shall be not less than one year or more than ten years, except that such period may be for more than ten years for a person convicted of a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b or sentenced as a persistent

---

[7] Our Supreme Court has observed that, in enacting the special parole scheme, "the legislature intended to permit the imposition of special parole as a sentencing option which insures intense supervision of convicted felons after [they are] released to the community and allows the imposition of parole stipulations on the released inmate." (Internal quotation marks omitted.) *State* v. *Tabone*, 292 Conn. 417, 434, 973 A.2d 74 (2009).

dangerous felony offender pursuant to subsection (h) of section 53a-40 or as a persistent serious felony offender pursuant to subsection (j) of section 53a-40." The resolution of this appeal requires that we interpret the phrase "period of special parole" as used in § 54-125e (c).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we look also for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Leak*, 297 Conn. 524, 532–33, 998 A.2d 1182 (2010).

It is not clear from a review of subsection (c) of § 54-125e whether the ten year limit on the "period of special parole" limits the special parole portion of the sentence imposed for individual offenses or whether it limits a defendant's aggregate sentence that arises from his

conviction of multiple offenses for which special parole was imposed by the sentencing court. By its terms, subsection (c) creates a distinction between a class of offenders for which the period of special parole shall be between one and ten years in duration and another class of offenders for which the period of special parole may exceed ten years. This distinction, based upon the type of offense committed by the defendant, does not clarify the issue before us.

In ascertaining the meaning of "period of special parole," we consider other subsections of § 54-125e. An examination of subsection (a) sheds light on the statutory language at issue. Subsection (a) creates the scheme of postrelease supervision of persons sentenced to a period of special parole. It transfers jurisdiction over any person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole, from the commissioner of correction to the chairperson of the board of pardons and paroles, after which time supervision is to be undertaken by the department of correction. Subsection (a) provides that such automatic transfer of jurisdiction occurs "at the expiration of the maximum term or terms of imprisonment imposed by the court . . . ." General Statutes § 54-125e (a). Thereafter, such person shall "remain under the jurisdiction of said chairperson until the expiration of the period of special parole imposed by the court. . . ." General Statutes § 54-125e (a).

When interpreting a statute, this court is guided by the principle that a statute should not be read in such a manner as to render any portion of it superfluous. See *State* v. *Christiano*, 228 Conn. 456, 472, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). Section 54-125e (a) provides in relevant part: "Any person convicted of a crime . . . who received a definite sentence of more than two years

followed by a period of special parole shall, at the expiration of the maximum *term or terms* of imprisonment imposed by the court, be automatically transferred to the jurisdiction of the chairperson of the Board of Pardons and Paroles . . . until the expiration of the period of special parole imposed by the court. . . ." (Emphasis added.) By providing that supervision of a person is transferred to the jurisdiction of the chairperson of the board of pardons and paroles and that said person remains under the jurisdiction of the chairperson "until the expiration of the period of special parole imposed by the court," the legislature has provided that a period of special parole commences not only in a situation in which a person has been sentenced to a single *term* of incarceration and special parole, but after a person has been sentenced to multiple *terms* of incarceration and special parole for more than one offense. For purposes of our statutory analysis, this language acknowledges that, in a situation in which a person has been sentenced for multiple offenses to terms of incarceration and special parole, a single "period of special parole" begins after the expiration of the maximum terms of incarceration have expired. Thus, subsection (a) conveys that a "period of special parole" describes that period of time that follows the expiration of a person's maximum *terms* of incarceration.

Having interpreted relevant language in subsection (a), the proper application of the limit on the period of special parole that follows in subsection (c) becomes clear. The "period of special parole" that commences after the expiration of a person's maximum *term* or *terms* of incarceration "shall not be less than one year or more than ten years" for a person, like the defendant, who has not been convicted of one of the enumerated exceptions set forth in subsection (c) for which a longer period of special parole may be imposed. Accordingly, we conclude that the court exceeded its sentencing

authority insofar as it sentenced the defendant to serve sixteen years of special parole. The court abused its discretion in denying the motion to correct because it lacked the authority to sentence the defendant to a term of special parole that exceeded ten years.

The state argues that several provisions reflect that a "period of special parole" refers to the special parole portion of a sentence imposed for a single applicable offense. The state refers to § 53a-28 (a) ("every person convicted of an offense shall be sentenced in accordance with this title"); § 53a-28 (b) ("when a person is convicted of an offense, the court shall impose one of the following sentences . . . (9) a term of imprisonment and a period of special parole"); § 54-125e (c) (providing that period of special parole may exceed ten years for enumerated offenses)[8] and General Statutes § 54-128 (c) ("[t]he total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized for the offense for which the person was convicted"). We acknowledge that the legislature has referred to special parole in the manner suggested by the state. This, however, does not detract from our analysis. A period or term of special parole may be imposed as punishment for a single offense, and such period would arise following the expiration of a person's maximum term of imprisonment imposed by the court. What our interpretation has revealed, however,

[8] General Statutes § 54-125e (c) provides: "The period of special parole shall be not less than one year or more than ten years, except that such period may be for more than ten years for a person convicted of a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b or sentenced as a persistent dangerous felony offender pursuant to subsection (h) of section 53a-40 or as a persistent serious felony offender pursuant to subsection (j) of section 53a-40."

is that regardless of whether a person has been convicted of one offense or multiple offenses, the legislature has used the phrase "period of special parole" to refer to that duration of time in which a person is transferred to the jurisdiction of the chairperson of the board of pardons and paroles for supervision.[9]

[9] As should be clear from our analysis, we conclude that a textual analysis of § 54-125e yields a plain and unambiguous meaning of the ten year limitation set forth in subsection (c). The dissenting opinion begins by undertaking a textual analysis of § 54-125e, one that properly considers its text as well as its relationship to several other statutory provisions that were addressed in the majority opinion. Following the textual analysis, the dissent concludes that the statute does not impose a ten year limit on an aggregate term of special parole. Thereafter, the dissent undertakes an analysis of legislative history and, in so doing, appears to rely upon the legislative history of a 2002 proposed revision to § 54-125e that did not become law.

For several reasons, we decline to rely upon this legislative material. First, § 1-2z instructs that, in interpreting the meaning of a statute, legislative history is to be considered *only* when a textual analysis does not yield a clear and unambiguous interpretation. The dissent states that review of extratextual materials is appropriate because the majority opined that a review of subsection (c) of § 54-125e in isolation does not clarify the meaning of the ten year limitation codified therein and because the defendant argues that the statute is ambiguous. As stated previously, the majority concludes that a textual analysis of the statute *as a whole* adequately clarifies the meaning of the ten year limitation. There is no authority for the proposition that a review of extratextual material is warranted where an isolated portion of a statute adequately is clarified by an analysis of the statute as a whole. Furthermore, determining whether statutory language is ambiguous is a function of judicial analysis, not merely the assertions of a party. Second, our case law reflects that a review of extratextual material to ascertain statutory meaning is not without limit. When more than one interpretation of a statute is plausible, we may "look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Johnson*, 301 Conn. 630, 650, 26 A.3d 59 (2011). The material discussed by the dissent, which relates to a proposed revision that did not become law, is not evidence of the legislative intent surrounding the enactment of the statutory language at issue, nor is it evidence of the circumstances surrounding its enactment. Finally, even if such material properly may be considered as part of the overall history of the statute, we are left to question the dissent's reliance upon it. Although the proposed revision bears directly upon the issue before us, ultimately the legislature lacked the will to change the law. This court

The state impliedly argues that our interpretation of the statute will have the effect of precluding trial courts from imposing consecutive periods of special parole. In this vein, the state urges us to consider that, in the context of probation, General Statutes § 53a-31 (a) provides that "[m]ultiple periods [of probation], whether imposed at the same or different times, shall run concurrently." The state argues that because the legislature did not enact a similar prohibition with regard to special parole, it did not intend to preclude the courts from imposing consecutive sentences that include special parole and, thus, a period of special parole arising from multiple lawful sentences that is without a duration limited by law. The absence of a similar prohibition as that found in the probationary scheme does not affect our analysis. We do not, as the state suggests, read into the special parole scheme a limitation on the court's authority that does not exist. Likewise, we do not apply to special parole the same limitation as that codified in § 53a-31 (a) when, as the state properly observes, such limitation does not appear in the enactments related to special parole.

Section 53a-31 (a) directs that periods of probation, regardless of when they are imposed, must run concurrently. Subsection (c) of § 54-125e provides that a period of special parole cannot exceed ten years in length unless the offender falls into one of the exceptions set forth in the statute. The legislature employed different means of limiting the authority of the sentencing court. We recognize the significant distinctions between probation and special parole and must leave such disparate limitations to the will of the legislature. Furthermore, contrary to the state's argument, nothing in our analysis precludes a court from imposing consecutive sentences—that include a period of special parole—for multiple offenses. What a court cannot lawfully do, however,

is not bound by a proposed revision of the law, but must apply the law as it is written.

is order that a period of special parole exceed ten years in length. Thus, we reject the state's argument that a person who does not fall under the exceptions set forth in § 54-125e (c) lawfully may be sentenced under consecutive sentences such that an aggregate period of special parole may exceed ten years.[10]

Having concluded that the sentence imposed is illegal, we must consider an appropriate remedy. In so doing, we are mindful that the sentence reflected and followed a plea agreement between the state and the defendant. A review of the sentencing hearing reflects that the state and the defendant believed that the sixteen year period of special parole was lawful. A mutual mistake existed as to the legality of the sentence. The defendant requests that this court declare his sentences illegal and, in accordance with our interpretation of § 54-125e (c), "order a new sentencing in compliance with the relevant statutory provisions for special parole." The defendant does not request an opportunity to withdraw his pleas. The state argues that, if a remand is necessary, the end result should not be a mere reduction of the period of special parole from sixteen years to ten years. The state asserts that such a resolution would be both inequitable and unfair, as it would benefit

[10] Although it is not clear how the observation weighs into its analysis, the dissent observes that the majority's decision "may affect other persons already serving consecutive special parole terms in excess of ten years." Then, by way of example, the dissent discusses at length the specific sentence that was handed down by the trial court in *State* v. *Eastwood,* 83 Conn. App. 452, 850 A.2d 234 (2004), cert. denied, 286 Conn. 914, 945 A.2d 978 (2008). Our careful review of *Eastwood* reflects that the legality of the defendant's sentence was an issue that neither was raised by the defendant on direct appeal nor considered by this court. Because this court, in affirming the judgment of conviction, did not make any holding related to the propriety of the defendant's sentence, we deem *Eastwood* to be irrelevant to the issue before us. While we are bound by controlling precedent, our analysis of the legality of the defendant's sentence in this appeal is not affected by the specter that other defendants may have been burdened with a sentence that, likewise, is illegal.

the defendant but would not in any way reflect the agreement reached during plea negotiations or preserve the state's benefit of the bargain. Relying upon principles of contract law, the state urges us to conclude that a change in the period of special parole necessarily "unravels" the entire plea agreement. The state asks us to vacate the defendant's pleas in their entirety and, by implication, restore the cases to the trial list.

We find guidance in decisions of our Supreme Court in which the court addressed related sentencing issues. In *State* v. *Tabone*, supra, 279 Conn. 527, the defendant, pursuant to a plea agreement, pleaded guilty under the *Alford* doctrine[11] to several crimes. Id., 530. The trial court sentenced the defendant to a total effective term of ten years imprisonment followed by a period of special parole of ten years. Id. Thereafter, the defendant filed a motion to correct the sentence imposed with regard to one of the crimes, sexual assault in the second degree. Id. The trial court denied the defendant's motion, and the defendant appealed from that judgment. Id., 532. Our Supreme Court agreed with the defendant, concluding "that the defendant's sentence violates § 54-128 (c) because the total length of the term of imprisonment and term of special parole combined exceeds the maximum term of imprisonment authorized for sexual assault in the second degree."[12] Id., 533. Our Supreme Court reversed the judgment and remanded the case to the trial court "for resentencing in accordance with *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), and *State* v. *Miranda*, 260 Conn. 93, 127–30, 794

---

[11] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[12] Although the defendant did raise a claim of error in this regard, the court nonetheless held that the defendant's sentence for another crime, sexual assault in the third degree, likewise violated § 54-128 (c) and, thus, was illegal. *State* v. *Tabone*, supra, 279 Conn. 545.

A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002)."[13] *State* v. *Tabone*, supra, 544.

Following that remand, the defendant in *Tabone I* was resentenced by the trial court, which imposed a total effective sentence of twenty years incarceration, execution suspended after ten years, with ten years probation. *State* v. *Tabone*, 292 Conn. 417, 419–20, 973 A.2d 74 (2009) (*Tabone II*). The defendant again appealed, arguing that the new sentence was illegal on

---

[13] "In *State* v. *Raucci*, supra, 21 Conn. App. 562, the Appellate Court recognized that a defendant who has appealed successfully from a multicount conviction and punishment, or who has prevailed on his motion to correct an illegal sentence, has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety. The Appellate Court therefore adopted the aggregate package theory of resentencing, which recognizes that when a trial court imposes [a] sentence pursuant to a multicount conviction, its intent ordinarily is to structure the sentences on the various counts so as to arrive at a total effective sentence that it deems appropriate for both the crimes and the criminal. Id., 563. Essentially, the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent. Id., 562. Accordingly, the Appellate Court concluded that the [resentencing] court's power under these circumstances is limited by its original sentencing intent as expressed by the original total effective sentence, and, furthermore, that this power is permissive, not mandatory. Although the court may reconstruct the sentencing package to conform to its original intent, it is not required to do so. It may, therefore, simply eliminate the [illegal portion of the] sentence previously imposed . . . and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the [illegal portion of the original] sentence . . . . The guiding principle is that the court may resentence the defendant to achieve a rational, coherent [sentence] in light of the remaining convictions, as long as the revised total effective sentence does not exceed the original. Id., 563, quoting *United States* v. *Bentley*, 850 F.2d 327, 328 (7th Cir.), cert. denied, 488 U.S. 970, 109 S. Ct. 501, 102 L. Ed. 2d 537 (1988); see also *State* v. *Miranda*, supra, 260 Conn. 127–30 (adopting aggregate package theory of resentencing for reasons articulated in *Raucci*)." (Internal quotation marks omitted.) *State* v. *Tabone*, supra, 279 Conn. 544 n.19.

several grounds. Id. The court agreed with the defendant that the new sentence was illegal because it improperly enlarged the defendant's sentence. Id., 430–31. As it did in *Tabone I*, the court remanded the case for resentencing in accordance with the aggregate package theory. Id., 431. In so doing, the court recognized that although "it would be difficult for the trial court to construct a sentence that would closely approximate the defendant's original sentence"; id.; it "[left it] to that court, in its discretion, to fashion an appropriate sentence . . . ." Id., 438. Our Supreme Court later explained that it "adopted the aggregate package theory without restriction on the basis of the underlying reason for the remand order." *State* v. *Wade*, 297 Conn. 262, 272, 998 A.2d 1114 (2010). It is significant in our analysis that, like the defendant in *Tabone I* and *Tabone II*, the defendant in the present case does not seek to withdraw his pleas or vacate the plea agreement, but merely seeks the imposition of a new sentence.[14] Furthermore, we question whether this court in reviewing the denial of a motion to correct an illegal sentence has the authority to order the trial court to grant relief that exceeds resentencing. This court has held that "[t]he purpose of Practice Book § 43-22 is not to attack the validity of a conviction by setting it aside but, rather to correct an illegal sentence or disposition, or one imposed or made in an illegal manner." *State* v. *Mollo*, 63 Conn. App. 487, 491, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001).

To a great extent, the state's arguments concerning an appropriate remand mirror those advanced by Justice

---

[14] Cf. *United States* v. *Gibson*, 356 F.3d 761, 767 (7th Cir. 2004) (court vacates illegal sentence, conviction, guilty plea and acceptance thereof after defendant seeks permission to void entire plea agreement because it led to imposition of illegal sentence); *United States* v. *Greatwalker*, 285 F.3d 727, 730–31 (8th Cir. 2002) (court vacates conviction following guilty plea and vacates illegal sentence after defendant seeks permission to withdraw plea because it led to imposition of illegal sentence).

Schaller in his concurring and dissenting opinion in *Tabone II*, which is heavily cited by the state. See *State v. Tabone*, supra, 292 Conn. 453–58 (*Schaller, J.*, concurring in part and dissenting in part). Despite those well reasoned arguments, we, as an intermediate court of appeal, are bound by the majority's resolution of the issue. Like the defendant in the present case, the defendant in *Tabone I* and *Tabone II* was sentenced pursuant to a plea agreement reached with the state, one that led to the imposition of a sentence later held to be illegal. In both appeals, our Supreme Court deemed it appropriate to remand the case for resentencing under the aggregate package theory, not to vacate the defendant's pleas. Relying upon this precedent, we afford similar relief in the present appeal.

The judgment is reversed and the case is remanded for resentencing according to law.

In this opinion BISHOP, J., concurred.

BEAR, J., dissenting. I disagree with the majority's conclusion that the trial court improperly denied the motion to correct an illegal sentence filed by the defendant, Ronald Brown. I conclude, to the contrary, that the trial court properly denied the defendant's motion because the sentence imposed was not illegal. I therefore respectfully dissent from the majority's direction to remand the case for resentencing, and I would affirm the judgment of the sentencing court.

I agree with the majority that the outcome of this case is dependent on our interpretation of the General Statutes. In *State v. Tabone*, 292 Conn. 417, 431–32, 973 A.2d 74 (2009), our Supreme Court explained: "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory

language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.)

General Statutes § 54-125e provides: "(a) Any person convicted of a crime committed on or after October 1, 1998, who received a definite sentence of more than two years followed by a period of special parole shall, at the expiration of *the maximum term or terms of imprisonment imposed by the court*, be automatically transferred to the jurisdiction of the chairperson of the [b]oard of [p]ardons and [p]aroles or, if such person has previously been released on parole pursuant to subsection (a) of section 54-125a or section 54-131a, remain under the jurisdiction of said chairperson until the expiration of the period of special parole imposed by the court. The [d]epartment of [c]orrection shall be responsible for the supervision of any person transferred to the jurisdiction of the chairperson of the [b]oard of [p]ardons and [p]aroles under this section during such person's period of special parole.

"(b) When sentencing a person to a period of special parole, the court may recommend that such person comply with any or all of the requirements of subsection (a) of section 53a-30. The court shall cause a copy of any such recommendation to be delivered to such person and to the [d]epartment of [c]orrection. The [b]oard of [p]ardons and [p]aroles may require that such person comply with the requirements of subsection (a) of section 53a-30 which the court recommended. Any person sentenced to a period of special parole shall also be

subject to such rules and conditions as may be established by the [b]oard of [p]ardons and [p]aroles or its chairperson pursuant to section 54-126.

"(c) The period of special parole shall be not less than one year or more than ten years, except that such period may be for more than ten years for a person convicted of a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b or sentenced as a persistent dangerous felony offender pursuant to subsection (h) of section 53a-40 or as a persistent serious felony offender pursuant to subsection (j) of section 53a-40.

"(d) Whenever a parolee has, in the judgment of such parolee's parole officer, violated the conditions of his or her special parole, the board shall cause the parolee to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing, the parolee shall be informed of the manner in which such parolee is alleged to have violated the conditions of such parolee's special parole and shall be advised by the employee of the board conducting the hearing of such parolee's due process rights.

"(e) If such violation is established, the board may: (1) Continue the period of special parole; (2) modify or enlarge the conditions of special parole; or (3) revoke the sentence of special parole.

"(f) If the board revokes special parole for a parolee, the chairperson may issue a mittimus for the commitment of such parolee to a correctional institution for any period not to exceed the unexpired portion of the period of special parole.

"(g) Whenever special parole has been revoked for a parolee, the board may, at any time during the unexpired portion of the period of special parole, allow the

parolee to be released again on special parole without court order." (Emphasis added.)

In construing the meaning of this statute, the majority recognizes the principle of law that "a statute should not be read in such a manner as to render any portion of it superfluous." It then proceeds to pay special attention to the words *"term or terms of imprisonment"* in subsection (a) of § 54-125e to reach the conclusion that "the legislature has provided that a period of special parole commences not only in a situation in which a person has been sentenced to a single *term* of incarceration and special parole, but after a person has been sentenced to multiple *terms* of incarceration and special parole for more than one offense." (Emphasis in original.) The emphasized language merely provides that, in a situation in which a person has been sentenced for multiple offenses to terms of incarceration and special parole, special parole begins after the expiration of the multiple terms of incarceration. The statutory reference to a "period of special parole" describes that period of time that follows the expiration of a person's term of incarceration for each offense to which the defendant has pleaded or has been found to be guilty. Thus, I am not persuaded by the majority's interpretation that limits the period of special parole to a maximum of ten years despite the number of offenses to which the defendant has pleaded or has been found to be guilty, and which, although attempting to read the statute in a manner that would not render any portion thereof superfluous, ignores the plain words that state: "Any person convicted of *a crime* committed on or after October 1, 1998, who received *a definite sentence* of more than two years followed by *a period of special parole* shall, at the expiration of the maximum term or terms of imprisonment imposed by the court, be automatically transferred to the jurisdiction of the chairperson of the [b]oard of [p]ardons and [p]aroles

. . . ." (Emphasis added.) General Statutes § 54-125e (a). While focusing on the words "term or terms of imprisonment," the majority fails to consider the legislative import of the words "a crime" and "a definite sentence," also used in the statute.

I agree with the state's interpretation of § 54-125e and conclude that the legislature has not limited the authority of the sentencing court in the manner set forth by the majority. Following the legislative directive of § 1-2z that we consider the text of a statute in relation to other statutes; see *State* v. *Tabone,* supra, 292 Conn. 431–32; I find further support for the state's interpretation of § 54-125e in other statutes. General Statutes § 54-128 (c) provides that "[t]he total length of the term of incarceration and term of special parole combined shall not exceed the maximum sentence of incarceration authorized *for the offense* for which the person was convicted." (Emphasis added.) I conclude that this further supports the state's position that the sentencing court is limited only by the maximum sentence on each offense.

Additionally, General Statutes § 53a-28, entitled "Authorized sentences," provides in relevant part: "(a) Except as provided in section 17a-699 and chapter 420b, to the extent that the provisions of said section and chapter are inconsistent herewith, every person convicted of an offense shall be sentenced in accordance with this title. (b) Except as provided in section 53a-46a, when a person is convicted of *an offense,* the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by section 18-65a or 18-73; or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional

discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65a or 18-73; or (8) a sentence of unconditional discharge; *or (9) a term of imprisonment and a period of special parole as provided in section 54-125e.*" (Emphasis added.)

Furthermore, General Statutes § 53a-37 provides: "When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. When a person is sentenced for two or more counts each constituting a separate offense, the court may order that the term of imprisonment for the second and subsequent counts be for a fixed number of years each. The court in such cases shall not set any minimum term of imprisonment except under the first count, and the fixed number of years imposed for the second and subsequent counts shall be added to the maximum term imposed by the court on the first count."

Reviewing each of the statutes referenced herein in relation to each other, I conclude that the sentencing court may sentence a defendant to a term of imprisonment and special parole for each crime upon which he or she is convicted, provided each individual sentence

does not exceed the maximum sentence allowed for that offense, and that the court has the authority to order those sentences to run consecutively, even if the aggregate term of special parole exceeds ten years. See General Statutes §§ 54-128 (c), 54-125e, 53a-28 and 53a-37.

Under the rationale of the majority opinion, if the sentencing court were to order multiple sentences to run concurrently, and it ordered special parole on each sentence, the terms of special parole simply would merge into the largest term of special parole so long as it was ten years or less, unless one or more of the offenses were within the statutory exception permitting a longer term. I do not disagree with this interpretation for concurrent sentences. However, I disagree with the majority's application of this principle to consecutive sentences. Although our statutes clearly permit the sentencing court to order consecutive sentences; see General Statutes § 53a-37; the majority concludes that consecutive sentences with special parole can be ordered only if the aggregate term of the special parole does not exceed ten years, except for certain enumerated crimes. If the aggregate term of special parole would exceed ten years, the majority concludes that the court is not permitted to order such a sentence. This would result, under the reasoning of the majority, in an illegal sentence. Although the majority reads these restrictions into § 54-125e, I can find no authority to support such a limitation on the sentencing court.[1]

---

[1] It is possible that the decision of the majority in this case may affect other persons already serving consecutive special parole terms in excess of ten years. See, e.g., *State* v. *Eastwood*, 83 Conn. App. 452, 454, 454 n.1, 850 A.2d 234 (2004) (defendant sentenced to total effective term of nine years incarceration, followed by fifteen years of special parole), cert. denied, 286 Conn. 914, 945 A.2d 978 (2008). A review of the judgment file in the *Eastwood* case reveals the following sentence: On count one, criminal attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-94 (a), the court sentenced the defendant to three years incarceration, to be followed by five years special parole. On count two, criminal attempt to commit kidnapping in the second degree in

Furthermore, our legislature knows how to limit explicitly the authority of the court when it desires to impose such a limitation in the area of sentencing. In General Statutes § 53a-31, our legislature has directed: "(a) A period of probation or conditional discharge commences on the day it is imposed, except that, where it is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment. *Multiple periods, whether imposed at the same or different times, shall run concurrently. . . .*" (Emphasis added.) There is no similar limitation in the area of special parole.

Additionally, the majority opines that "[i]t is not clear from a review of subsection (c) of § 54-125e whether the ten year limit on the 'period of special parole' limits the special parole portion of the sentence imposed for individual offenses or whether it limits a defendant's aggregate sentence that arises from his conviction of multiple offenses for which special parole was imposed by the sentencing court." For the purpose of argument, I assume that the majority and the defendant correctly have determined that § 54-125e is ambiguous, and I, thus, also examine applicable legislative history.

---

violation of §§ 53a-49 (a) (2) and 53a-94 (a), the court sentenced the defendant to three years incarceration, to be followed by five years special parole, to run consecutive to count one. On count three, criminal attempt to commit kidnapping in the second degree in violation of §§ 53a-49 (a) (2) and 53a-94 (a), the court sentenced the defendant to three years incarceration, to be followed by five years special parole, to run consecutive to counts one and two. On counts four through six, each of which was a charge of risk of injury to child in violation of General Statutes (Rev. to 1999) § 53-21 (a) (1), as amended by Public Acts 2000, No. 00-207, § 6, the court sentenced the defendant to three years incarceration, to run concurrently. On the final count, count seven, interfering with an officer in violation of General Statutes § 53a-167a, the court sentenced the defendant to one year incarceration, also to run concurrently, for a total effective sentence of nine years incarceration, to be followed by fifteen years of special parole.

The legislative history of § 54-125e does not clarify the intent of the legislature in enacting that statute. However, the legislative history of a proposed revision to § 54-125e provides some support for my interpretation of § 54-125e. On March 7, 2002, Senate Bill No. 587 was referred to the joint committee on judiciary, which, on March 25, 2002, reported favorably on the bill in a unanimous vote.[2] The bill, which then was passed by the Senate on April 17, 2002, on a vote of thirty-three to three, provided that § 54-125e be amended:[3]

"The Committee on Judiciary reported through SEN. [ERIC D.] COLEMAN of the 2nd Dist., Chairperson of the Committee on the part of the Senate, that the bill ought to pass.

"AN ACT CONCERNING SPECIAL PAROLE.

"Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. Section 54-125e of the general statutes, as amended by section 21 of public act 01-84, is repealed and the following is substituted in lieu thereof (Effective October 1, 2002):

"(a) Any person convicted of [a crime] one or more crimes committed on or after October 1, 1998, who received a definite sentence or aggregate sentence of more than two years followed by a period of special parole shall, at the expiration of the maximum term or terms of imprisonment imposed by the court, be transferred from the custody of the Commissioner of Correction to the jurisdiction of the [chairman] chairperson of the Board of Parole or, if such person has

---

[2] See history of 2002 Senate Bill No. 587 available at www.cga.ct.gov/asp/cgabillstatus/cgabillstatus.asp?selBillType=Bill&bill_num=587&which_year=2002&SUBMIT1.x=12&SUBMIT1.y=7

[3] Deleted material is bracketed; new material is underlined.

previously been released on parole pursuant to subsection (a) of section 54-125a, as amended, or section 54-131a, remain under the jurisdiction of said [chairman] chairperson until the expiration of the period of special parole imposed by the court.

"(b) Any person sentenced to a period of special parole shall be subject to such rules and conditions as may be established by the Board of Parole or its [chairman] chairperson pursuant to section 54-126.

"(c) The period of special parole shall be not less than one year nor more than ten years for any single crime, except that such period may be for more than ten years for a person convicted of a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b or sentenced as a persistent dangerous felony offender pursuant to subsection (h) of section 53a-40 or as a persistent serious felony offender pursuant to subsection (j) of section 53a-40."

When asked to explain the bill, Senator Coleman explained in relevant part: "Oftentimes an individual [may be] arrested for a single incident and there may be a number of charges that are lodged as a result of that incident. And a person may be convicted for multiple charges . . . [a]nd may be sentenced on those convictions. Under that circumstance it was very unclear under the way that the current statute has been written that that person could ever be eligible for a special parole because of the multiple convictions. This bill seeks to make it clear that such an individual would be able to earn special parole . . . . I can't deny . . . that part of the rationale for that would be to alleviate the overcrowding in our prison system that currently exists. But also, I think there is some forward thinking in operation." 45 S. Proc., Pt. 4, 2002 Sess., p. 1062,

remarks of Senator Eric D. Coleman. When asked by Senator John P. McKinney whether the law currently provided that people convicted of multiple crimes could only serve concurrent terms of special parole; id., pp. 1066–67; Senator Coleman explained: "Under the current interpretation of the statute there is some thought that a person could not be on parole, special parole, for more than ten years. What this bill does is to make it clear that particularly in the case of aggregate sentences that a person could be placed on special parole for a period of time exceeding ten years." Id., p. 1067. When questioned further, Senator Coleman responded: "The intent of this bill is to make it extremely clear that special parole is applicable to individuals who've been sentenced for conviction on more than one crime"; id., p. 1069; and that "the main purpose of the bill is to make it clear that a person could be placed on special parole for a period of time exceeding ten years."[4] Id., p. 1074.

Although 2002 Senate Bill No. 587 had unanimous support in the judiciary committee and had considerable support in the Senate, it, nonetheless, died in the House of Representatives. See 45 H.R. Proc., Pt. 6, 2002 Sess., pp. 1792–1811.

In this case, the defendant was sentenced on two different dockets after a global plea agreement. In docket number CR-06-0112604, he accepted an offer of five years incarceration, to be followed by ten years of special parole. In docket number CR-05-0109070, he accepted an offer of four years incarceration, to be followed by six years of special parole. The sentences, as agreed, were to run consecutively, for a total effective

[4] I also note that there was some discussion among some members of the Senate that the special parole provisions of § 54-125e were meant only to apply to persons sentenced after being convicted of one crime and that special parole could not be given to someone convicted of more than one crime. See 45 S. Proc., Pt. 4, 2002 Sess., pp. 1061–74. This, however, did not appear to be the sentiment of the majority. See id.

sentence of nine years incarceration, followed by sixteen years special parole. Had the defendant chosen to go to trial on these charges, he was exposed to a maximum sentence of twenty years incarceration in the first docket and fifteen years incarceration in the second docket, for a total exposure of thirty-five years incarceration.[5] Under our law, if the defendant were convicted after trial, the sentencing court could have sentenced him to serve up to thirty-five years incarceration, after ordering the sentences on each of the two charges that were the basis for sentencing to run consecutively. However, under the majority's reasoning, the court could not sentence him to nine years in prison, twenty-six years less than the maximum sentence for the offenses, followed by sixteen years special parole, solely because the aggregate term of special parole exceeded ten years. I do not agree that § 54-125e limits the authority of the sentencing court in such a manner. Considering § 54-125e in relation to §§ 54-128 (c), 53a-28 and 53a-37, I conclude that the court had the authority to order the defendant's sentence, including the separate periods of special parole, to run consecutively.

Additionally, I also note my disagreement with the remedy set forth by the majority in this case. Practice Book § 43-22 provides that the judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. The majority vacates the defendant's sentence and remands the matter for resentencing according to law. However, I conclude that it likely is impossible for

---

[5] Furthermore, as set forth in its footnote 2, the majority notes that the defendant received additional benefits from his plea agreement because the court imposed a sentence of unconditional discharge on the reckless driving count that was brought under MV-05-0443087, and the state entered a nolle prosequi with regard to several additional charges brought under several docket numbers, including docket numbers CR-05-0109070 and CR-06-0112604.

the court to correct the sentence imposed in a manner that effectuates the intent of the plea agreement. Because the majority opinion requires a reduction of six years of special parole, this case arguably differs from *Tabone*, where what was at issue was one year of the special parole part of the agreement. This result in the present case does not give the state the benefit of its bargain, nor does it leave the trial court with the terms and scope of the sentence it accepted. The court is not permitted to substitute probation for special parole; see *State* v. *Tabone*, supra, 292 Conn. 429–30; nor would more prison time be a comparable substitute for the special parole portion of the sentence. See id. It appears that the only alternative for the court in this case would be to reduce the defendant's term of special parole by more than one third. In this case, the defendant not only received the benefit of a nine year term of incarceration, when he was exposed to a maximum sentence of thirty-five years, but he also received an unconditional discharge on a count of reckless driving in another docket and nolle prosequis on several other counts in other dockets. See footnote 5 of this opinion. The majority's rescript also would provide the defendant the unforeseen additional benefit of an approximate one-third reduction in his period of special parole. I agree with the state that, if the sentence as imposed in this case was illegal, there is no legal sentence that could approximate the plea agreement. Thus, as requested by the state, I conclude that the defendant's pleas should be rescinded, that each count encompassed or covered by the plea agreement, including the nolle prosequis and the unconditional discharge, should be reinstated and that the matter should be remanded to the trial court for further proceedings, including, but not limited to, trial. See id., 453–56 (*Schaller, J.*, concurring in part and dissenting in part).

On the basis of the foregoing, I respectfully dissent and would affirm the judgment of the trial court.